2024 IL App (2d) 240084-U
No. 2-24-0084
Order filed March 26, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-0054 |
| JOE D. REAMY JR., | ) ) | Honorable Joseph C. Pedersen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The State failed to establish that there were no mitigating conditions that could prevent defendant's pretrial release from causing harm to any person or the public at large.

¶ 2   The State appeals the circuit court's order denying the pretrial detention of defendant, Joe D. Reamy Jr., pursuant to Public Acts 101-562 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] For the reasons below, we affirm.

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act. However, none of these names appear within the Illinois

¶ 3                                    I. BACKGROUND

¶ 4     On January 30, 2024, the State charged defendant with eight counts of possessing child pornography (720 ILCS 5/11-20.1(a)(6) (West 2022)) and two counts of disseminating child pornography (720 ILCS 5/11-20.1(a)(2) (West 2022)). On January 31, 2024, the State filed its verified petition to detain pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (720 ILCS 5/110-6.1 (West 2022)). Also on January 31, 2024, the court held a hearing on the State's petition. During the hearing, the State made a proffer describing how, according to a police synopsis, the De Kalb County sheriff's office had received a tip from the National Center for Missing and Exploited Children, leading them to obtain certain "subscriber information" for a Kik Messenger[2] account that had uploaded child pornography—specifically, three videos and two photos. Eventually, after obtaining a subpoena, the sheriff's office determined that the account belonged to defendant. Officers obtained a search warrant for defendant's residence and recovered defendant's cell phone, which was found to have contained three videos of child pornography. Officers further found additional photos and videos elsewhere in the residence. Defendant admitted to officers that he possessed the discovered child pornography, and that he had transmitted to others the two videos forming the basis of his charges for dissemination of child pornography.

¶ 5     After obtaining a search warrant for defendant's Kik account, police found messages purportedly sent by defendant to other Kik users, in which defendant seemingly solicited others to trade child pornography. In other messages, defendant asked another user, "[H]ow hot is your

_____

Compiled Statutes or public acts.

    [2] Kik Messenger, commonly referred to as "Kik," is a mobile application used for anonymous messaging.

daughter? You play with her? What's stopping you? The longer you wait, the more likely she will tell."

¶ 6    After making its proffer, the State argued that "the defendant poses a real and present threat to the safety of the community at large based on the specific articulable facts of this case." The State further added that "[n]o conditions or combination of conditions can mitigate that threat." Specifically, the State argued that, even if defendant were to be prohibited from accessing the Internet, "he can get to the Internet if he's released from custody."

¶ 7    The defense, on the other hand, underlined the fact that defendant—a 50-year-old veteran with no criminal history—was "not involved in any type of assaultive or violent behavior," and that he was not alleged to have produced any of the child pornography underlying his charges. Defendant further argued that the minors depicted in the subject pornography had not been identified, suggesting that the State did not establish that they would personally face any threat resulting from defendant's pretrial release. Given defendant's age, his "multiple physical and medical conditions," and the fact that no firearms were recovered from his home, defendant suggested that he posed little threat to the community.

¶ 8    Defendant proposed that, if he were to be released, he would surrender any items he owned that would allow him to access the Internet, including cell phones. Electronic home monitoring could also be imposed to verify defendant's compliance with this directive, as it would allow the sheriff's department "to go to his residence and to verify his compliance." Defendant further suggested that he be ordered to refrain from contacting any minors.

¶ 9    Following the parties' arguments, the court first found "that the proof [was] evident or the presumption great that *** defendant ha[d] committed [the] qualifying offenses." The court further found by clear and convincing evidence that defendant posed a threat to others, including any minor children "he may come in contact with." Nonetheless, "based on the specific articulable

facts of [the] case," the court stated that it was unable to find "that there are no conditions that would mitigate the real and present risk to the community or to any certain individuals." For this reason, the court ordered that defendant would be released on pretrial supervision, "that he [would] be placed on electronic home monitoring, that he [would] have no unsupervised contact with underage minors, [that he] may not reside in a home with any underage minors, and that he be prohibited from accessing the Internet," as well as possessing "any Internet-connected devices, including but not limited to a smartphone, tablet, or laptop." The trial court additionally specified that defendant would only be entitled to leave his home for medical appointments. The court memorialized these findings in a written January 31, 2024, order, and the State timely appeals.

¶ 10                                           II. ANALYSIS

¶ 11      On appeal, the State argues that the trial court abused its discretion when it ruled that the State failed to prove by clear and convincing evidence that no conditions could mitigate the threat defendant's pretrial release posed to others. The State offers several specific reasons on appeal as to how the trial court abused its discretion, asserting that: (1) the court failed to "properly weigh the fact that the minor subjects of the pornography defendant allegedly possessed and disseminated are victims whether defendant had personal contact with them or not;" (2) "the conditions imposed both fail[ed] to mitigate defendant's threat to the community and cannot be adequately enforced;" and (3) given the nature of defendant's alleged offense, "no conditions of pretrial release are adequate to keep the community safe and prevent a defendant's flight from prosecution."

¶ 12      Pursuant to the Code, pretrial release may be denied only in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). In order to successfully establish that a defendant should be detained pending trial, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense under section 110-6.1 of the Code; and (2) that no condition or combination of conditions

could mitigate the threat that defendant's release would pose to any person or the community at large. 725 ILCS 5/110-6.1(a), (f) (West 2022).

¶ 13    In reviewing whether a trial court erred in detaining a defendant under the Act, our standard of review is two-fold. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We review the trial court's factual findings—including the court's findings as to whether the State presented clear and convincing evidence that any conditions of release are inadequate to protect others—under the manifest-weight-of-the-evidence standard. *Id.* In analyzing the ultimate decision as to pretrial release, we review for an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is so arbitrary, fanciful, or unreasonable that no reasonable person would agree with the court's position. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 50.

¶ 14    Here, the State's first argument—that the trial court failed to appreciate that the minors depicted in the pornography defendant allegedly possessed were themselves victims—is, without further elaboration, irrelevant. While the children depicted in the materials clearly are victims, there is no evidence that defendant had any contact with them. Again, the trial court denied the State's petition to detain because it found that the State failed to show that no conditions could mitigate the threat to any person or the community. 725 ILCS 5/110-6.1(e)(3)(i) (West 2022). To this point, the State offers no argument as to how the depicted minors' status as victims has any bearing on this determination.

¶ 15    The State's second argument—that the conditions imposed on defendant are inadequate or unenforceable—is also easily dispensed with. In order to rebut the presumption that a defendant is eligible for pretrial release, among other things, the State must show by clear and convincing evidence that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of [the Code] can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-

6.1(e)(3) (West 2022). Section 110-10(a) of the Code provides certain mandatory conditions that must be imposed for defendants released prior to trial, while section 110-10(b) provides discretionary conditions that the trial court may impose. 725 ILCS 5/110-10(a), (b) (West 2022); *People v. Stock*, 2023 IL App (1st) 231753, ¶ 16.

¶ 16    Here, as outlined in the State's memorandum, the trial court imposed the following conditions on defendant for his pretrial release: (1) that he be subject to electronic home monitoring, only leaving the house for medical appointments; (2) that he refrain from contacting any minors, no matter where; (3) and that he surrender any Internet capable devices, including cell phones, computers, and tablets. The State argues that "no reasonable person could find that releasing defendant with [these] conditions mitigates the threat that he will cause harm to others," specifically when considering "the nature and circumstances of the offense charged." We disagree.

¶ 17    As established by the State's proffer, here, the conduct underlying defendant's charged offenses was inextricably bound to his use of the Internet. For instance, the State described how defendant purportedly uploaded child pornography to Kik via the Internet, leading to his arrest. Furthermore, given defendant's history of soliciting Kik users to trade for child pornography, as well as the lack of facts in the record suggesting that defendant was *producing* child pornography, it can be reasonably inferred that the pornography defendant had already obtained was also procured from the Internet. Finally, defendant's communications with another Kik user, in which he encouraged the user to abuse another minor, were also made over the Internet. Given the fact that all of this conduct was carried out over the Internet, it is axiomatic that prohibiting defendant from using or accessing the Internet would mitigate any harm stemming from these types of conduct. While the State makes the conclusory argument that these conditions are unenforceable, it overlooks the fact that, as part of defendant's electronic home monitoring, he would be subject to additional searches by the sheriff's department in order to verify his compliance with the

imposed conditions. Accordingly, we find that the trial court did not abuse its discretion in determining that conditions existed that could mitigate any threat defendant's release posed.

¶ 18  Nonetheless, the State further argues that, despite the court's above-referenced conditions, defendant is still "free to continue recruiting others to engage in the unlawful acts he is charged with via text, writing, or in person without proper supervision." Otherwise put, the State seems to argue that, because it is still theoretically *possible* for defendant to engage in harmful conduct while on release, the court's conditions are insufficient and defendant must be detained. We disagree.

¶ 19  Even if it were theoretically true that defendant still may engage in harmful behavior while on release, the relevant issue here is whether the conditions would *mitigate*—not completely prevent—any real risk and present risk defendant posed to individuals or the community. 725 ILCS 5/110-6.1(e)(3) (West 2022). Indeed, if criminal defendants were only entitled to pretrial release in scenarios where it was completely impossible for them to cause any further harm to any other individuals, it is doubtful that any defendants would qualify. Accordingly, we reject the State's argument.

¶ 20  Finally, the State suggests that, given the inherent danger presented by defendant's charges, "no conditions of pretrial release are adequate to keep the community safe." Unfortunately for the State, however, the legislature plainly disagrees. In enacting the Act, "[o]ur legislature has mandated that *all criminal defendants* are eligible for pretrial release." (Emphasis added.) *Stock*, 2023 IL App (1st) 231753, ¶ 18 (citing 725 ILCS 5/110-6.1(e) (West 2022)). For this reason, it is up to the State to justify a defendant's pretrial detention, and this burden requires more than a bare recitation that a defendant has committed a detainable offense. *Stock*, 2023 IL App (1st) 123753, ¶ 18.

¶ 21    For example, in *Stock*, the defendant was charged with aggravated battery before the State petitioned the trial court to deny him pretrial release. *Id.* ¶ 4. The trial court granted the State's petition, and the defendant appealed the detention order. *Id.* ¶ 9. On appeal, the appellate court agreed that the proof was evident or the presumption was great that the defendant committed a detainable offense, and that, based on the specific, articulable facts of the case, the defendant posed a real and present threat to the safety of any person or to the community. *Id.* ¶ 14. However, the First District found that the State failed to carry its burden in showing that "no condition or combination of conditions contained within section 110-10(b) of the Code [could] mitigate the real and present threat to the safety of any person or the community," as the State had only made the conclusory argument that "no condition or combination of conditions could mitigate the threat posed by [the] defendant" without offering any evidence to support that conclusion. *Id.* ¶ 17.

¶ 22    In rejecting the State's argument, the First District explained:

> "It must also be noted that, logically, the bare allegations that defendant has committed a violent offense are not sufficient to establish this element. Our legislature has mandated that all criminal defendants are eligible for pretrial release. [Citation.] Thus, even those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention. [Citation.] This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required. If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release. In other words, if alleging that defendant discharged a firearm and struck a person was sufficient to show that no conditions of pretrial release could mitigate any threat, then no defendant charged with aggravated

battery/discharge of a firearm would ever be eligible for pretrial release. That is clearly at odds with the statute's presumption of eligibility for all defendants, and the plain language of article 110 of the Code indicates that more is required." *Id.* ¶ 18.

¶ 23 This line of reasoning underscores the weakness of the State's argument. We certainly agree with the State that, given the " 'intrinsic' relationship between child molestation and child pornography," defendant's charged offenses are inherently dangerous (see *People v. Reyes*, 2020 IL App (2d) 170379, ¶ 119 (Birkett, J., concurring)). Still, through the Act, our legislature has mandated that "*all* criminal defendants are eligible for pretrial release." (Emphasis added.) *Stock*, 2023 IL App (1st) 231753, ¶ 18. Accordingly, the State's argument that any criminal defendant charged with child pornography should *per se* be denied pretrial release runs contrary to the Act. *Id.* Plainly put, if the legislature were convinced that all criminal defendants charged with child pornography presented an unmitigable threat to the community, it would have simply deemed those accused of child pornography ineligible for release. *Id.* However, this is not the case, meaning it is up to the State to justify any criminal defendant's pretrial detention, regardless of the defendant's specific charges. *Id.* Because the State has not carried this burden here, we are left with no choice but to affirm the trial court's denial of the State's petition to detain.

¶ 24                                      III. CONCLUSION

¶ 25    For all of these reasons, we affirm the judgment of the circuit court of De Kalb County.

¶ 26    Affirmed.