NOTICE

Decision filed 06/20/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240507-U

NO. 5-24-0507

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Douglas County. |
| | ) | |
| v. | ) | No. 24-CF-50 |
| | ) | |
| JEREMY D. SCHROCK, | ) | Honorable |
| | ) | Kate D. Watson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order denying the defendant's pretrial release where we find no reversible error based on the circuit court's findings that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and that no condition or combination of conditions could mitigate the real and present threat to that safety, was not against the manifest weight of the evidence, and the revocation order was not an abuse of discretion.

¶ 2    The defendant, Jeremy D. Schrock, appeals the April 4, 2024, order of the circuit court of Douglas County, granting the State's petition to deny pretrial release and ordering him detained. Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness

1

and Equity-Today (SAFE-T) Act (Act).[1] *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On appeal, the defendant argues that the circuit court abused its discretion when it denied his pretrial release, asserting that the State failed to prove by clear and convincing evidence that he posed a safety threat if released, which no conditions could mitigate. For the reasons that follow, we affirm the judgment of the circuit court of Douglas County.[2]

¶ 3                                 I. BACKGROUND

¶ 4       On April 2, 2024, the State charged the defendant by information with two counts of child pornography in violation of section 11-20.1(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-20.1(a)(2) (West 2022)), a nonprobationable Class X felony, and two counts of child pornography in violation of section 11-20.1(a)(6) of the Criminal Code (*id.* § 11-20.1(a)(6)), a nonprobationable Class 2 felony. On April 4, 2024, the State filed a verified petition to deny pretrial release alleging that the proof is evident and the presumption great that the defendant committed, and was charged with, an offense listed in section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)), and posed a real and present threat to the safety of any person or persons or the community. On the same date, a pretrial investigation report was filed for the circuit court's consideration.

¶ 5       On April 4, 2024, the circuit court held a hearing on the State's verified petition and ordered the defendant detained. The circuit court noted that it had previously examined the preliminary

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before June 6, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

statement of probable cause for the defendant's arrest. The State proffered the defendant's arrest synopsis along with the preliminary statement of probable cause, both submitted by the Illinois State Police. The preliminary statement of probable cause indicated that on October 15, 2023, the National Center for Missing and Exploited Children received a tip from Kik Messenger[3] that a user had uploaded child pornographic material. The report was later provided to the Illinois State Police, which led them to obtain search warrants, including a warrant for the defendant's Kik account. The State highlighted evidence from the proffered materials indicating that the Illinois State Police discovered evidence through these search warrants indicating that the defendant accessed "at least two videos of child pornography" through Kik and found messages between the defendant and other Kik users, in which the defendant solicited others to trade in child pornography depicting very young children. The State proffered that after his arrest, the defendant admitted to having viewed numerous instances of child pornography, saved such videos to watch later and masturbate to, and to trade through Kik with other users. The defendant admitted to having saved and sent up to 100 videos of child pornography, each depicting the abuse of a child without the ability to consent.

¶ 6     In arguing at the hearing that the defendant posed a real and present threat to the safety of the community, the State argued that the recovered material depicted child abuse images and videos that posed a significant risk to the community. The State argued that the charges represented abusive behavior, not only in viewing and possessing child pornography, but additionally by trading the videos with other Kik users. The State noted the admission of repeated behavior over a span of time with the knowledge that the behavior was wrong. The State argued that there were

---

[3]Kik Messenger, commonly referred to as "Kik," is a mobile application used for anonymous messaging.

no conditions that would be appropriate to mitigate the risk posed to the community by the defendant.

¶ 7    Defense counsel responded that the defendant's criminal history included only a speeding ticket from 2012, despite his advanced age, and that there was no evidence of wrongdoing from the time of the offense to the time of the hearing, approximately eight months. Defense counsel argued that the defendant was remorseful for his past conduct, lived remotely, and worked away from children. The defendant was willing to abide by pretrial conditions, such as reporting to pretrial services, not having a computer or using the internet, and undergoing evaluations and counseling.

¶ 8    Following the parties' arguments, the circuit court ordered the defendant detained, making an oral pronouncement from the bench, and entered a written detention order finding that the proof was evident or the presumption great that the defendant committed a detainable offense pursuant to section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)); posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and that no condition or combination of conditions set forth in section 110-10 of the Code (*id.* § 110-10) could mitigate the real and present threat to persons or the community.

¶ 9    On April 9, 2024, the defendant filed a timely notice of appeal, utilizing the "Notice of Pretrial Fairness Act Appeal 604(h) (Defendant as Appellant)" standardized form provided by the Illinois Supreme Court. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023). The Office of the State Appellate Defender was appointed to represent the defendant in this appeal and filed a memorandum in support of the Rule 604(h) appeal. The State filed a response to the defendant's memorandum and this appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11     As previously stated, pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. See *id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great (1) that the defendant has committed a qualifying offense, (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 12     The statute provides a nonexclusive list of factors that the circuit court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the circuit court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and

5

(9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 13　If the circuit court finds that the State proved a valid threat to a person's safety or the community's safety and/or the defendant's likely willful flight to avoid prosecution, then the circuit court must determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive but provides that no single factor or standard may be used exclusively to order detention. *Id.* § 110-6.1(f)(7).

¶ 14　If the circuit court determines that the defendant should be denied pretrial release, the circuit court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h). Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the [circuit] court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties

6

and witnesses." *Id.* The circuit court's ultimate determination regarding pretrial release, however, will not be reversed absent an abuse of discretion. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 11. An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. *Id.*

¶ 15    On appeal, the defendant argues that the circuit court abused its discretion when it denied his pretrial release, asserting that the State failed to prove by clear and convincing evidence that he posed a real and present threat if released, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community.

¶ 16                    A. Whether the Defendant Posed a Threat

¶ 17    The defendant first argues that where the Code uses the language "threat" and "safety" in section 110-6.1 (725 ILCS 5/110-6.1 (West 2022)), the context of the Act supports a reading that would indicate "threat to the safety" means a risk of violent criminal acts. In support of this argument, the defendant contends that the context of the Act and the enumerated factors the circuit court is to consider in making a dangerousness determination, in conjunction with the list of detainable offenses, demonstrate that the drafters intended the "threat to the safety" of persons or the public contemplated in section 110-6.1 of the Code (*id.* § 110-6.1) to mean that there is a threat that a defendant may commit a violent criminal act.

¶ 18    The defendant filed a supporting memorandum which did not address our recent decision in *People v. Johnson*, 2023 IL App (5th) 230714, wherein we held that dangerousness under the Act is not limited to a risk of violence. *Id.* ¶ 21. We find no reason to depart from our prior holding. As we reasoned in *Johnson*, we disagree that the factors listed under section 110-6.1(g) focus solely on violent acts, as factors three through eight fail to make any reference to violence. *Id.*

7

(citing 725 ILCS 5/110-6.1(g)(3)-(8) (West 2022)). Further, the first factor included under section 110-6.1(g) begins with the catchall phrase " '[t]he nature and circumstances of any offense charged.' " *Id.* (quoting 725 ILCS 5/110-6.1(g)(1) (West 2022)). The nature and circumstances of the offense include whether it is a crime of violence or a sex offense. 725 ILCS 5/110-6.1(g) (West 2022). Child pornography is a sex offense under article 11 of the Criminal Code (720 ILCS 5/art. 11 (West 2022)). Where the legislature explicitly listed whether or not the offense was a sex offense as a factor in determining dangerousness, we find that the legislature intended to treat the dangers posed by sex offenses as one of the bases for consideration in pretrial detention. See *People v. Jackson*, 2024 IL App (4th) 240441-U, ¶ 17.

¶ 19    While many of the listed detainable offenses relate to violent behavior, not all detainable offenses necessarily encompass violent behavior. For example, under section 110-6.1(a)(1), all felonies—other than forcible felonies——"for which, based on the charge or the defendant's criminal history, a sentence of imprisonment, without probation, periodic imprisonment, or conditional discharge, is required by law upon conviction" is a detainable offense. 725 ILCS 5/110-6.1(a)(1) (West 2022). Not all felonies involve violent behavior. See *People v. Belk*, 203 Ill. 2d 187, 193 (2003) (recognizing felonies can be classified as nonviolent. It is clear that not all detainable offenses under the Act involve violent behavior or physical harm). The term "threat to safety" contained in the Code does not require a risk of further violent acts. *Id.*

¶ 20    Next, the defendant argues that, even absent a finding that the Code requires a threat to physical safety through further violent acts, the harms associated with the mere possession and dissemination of child pornography still do not constitute a real and present threat as required by the Code. Specifically, the defendant contends that the psychological damage to a minor by possession and dissemination of child pornography, and the market created thereby, are harms too

remote and hypothetical to be reasonably classified as "real and present" and, thus, are not the types of "harm" the Code seeks to guard against for purposes of pretrial release.

¶ 21   The defendant cites *People v. Milam*, 2024 IL App (2d) 240027-U, as persuasive authority for his argument. In *Milam*, the appellate court reversed the circuit court's decision to detain a defendant that had been charged with three counts of possession of child pornography. *Id.* ¶¶ 4, 13. The *Milam* court reasoned that under the facts of that case, there was no evidence to establish that possessing images of past trespasses upon the privacy of minor victims presents a real and present danger to particular children or the community concerning pretrial release. While the facts here are distinguishable from those in *Milam*, where the defendant in that case was not alleged to have possessed child pornography with the intent to disseminate the same, to the extent that the court in that case reasoned that possession of child pornography could not constitute evidence contributing to a finding of a real and present danger to particular children or the community in the context of pretrial release, we disagree.

¶ 22   The State was not required to prove that the defendant had actually harmed a child or that he would physically harm any of the children depicted in the child pornography that he possessed. Rather, the State was required to prove that the defendant "pose[d] a real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e) (West 2022). Notably, the defendant points out, in arguing that the types of charges selected to authorize denial of pretrial release involved a majority of crimes of violence, that the list also includes crimes associated with a likelihood of crimes of violence, like possession of child pornography. In drafting the Act, the legislature included the offense of child pornography but chose to exclude other sex offenses contained in the same article of the Criminal Code as possession of child pornography. *Id.* § 110-6.1(a)(5). For example, prostitution and public indecency are not offenses included under the Act.

9

"The Code does not offer a blanket inclusion of every offense possible, or even every sex offense possible; it deliberately enumerates those it considers eligible for pretrial detention." *Jackson*, 2024 IL App (4th) 240441-U, ¶ 16. Thus, the legislature clearly considered the dangers posed by possession of child pornography sufficient for pretrial detention when it specifically listed that offense as eligible for detention. *Id.*

¶ 23    Additionally, the Code provides trial courts with a nonexclusive list of factors that they may consider in determining a particular defendant's dangerousness for purposes of pretrial release. Included in this list is the nature and circumstances of the offense charged, including whether it is a crime of violence or a sex offense. 725 ILCS 5/110-6.1(g) (West 2022). Again, possession of child pornography is a sex offense under article 11 of the Criminal Code (720 ILCS 5/art. 11 (West 2022)), a factor the Code allows courts to consider when determining dangerousness. *Jackson*, 2024 IL App (4th) 240441-U, ¶ 17. As previously stated, when the legislature explicitly lists sex offenses as a factor in determining dangerousness, we find the legislature intended to treat the possible harms caused by sex offenses as a basis for pretrial detention. *Id.*

¶ 24    As this is not the first time that we have addressed an argument about the dangers posed by possession of child pornography, we find it necessary to review the harm posed by the offense. The purpose of the child pornography statute is to prevent the sexual abuse and exploitation of children. *People v. Geever*, 122 Ill. 2d 313, 326 (1988). In a special concurrence in *People v. Porter*, 2024 IL App (5th) 231093-U, this court noted that our supreme court and the United States Supreme Court have both acknowledged that " 'child pornography is intrinsically related to child sexual abuse and states have a compelling interest in safeguarding physical and psychological health of children.' " *Id.* ¶ 29 (Vaughan, P.J., specially concurring) (quoting *People v. Hollins*,

2012 IL 112754, ¶ 18). Child pornography is an offense against the child, and causes harm to the physiological, emotional, and mental health of the child. *Hollins*, 2012 IL 112754, ¶ 18 (citing *New York v. Ferber*, 458 U.S. 747, 758 (1982)). Child pornography is particularly harmful because the recording could haunt the child in future years, especially in light of the mass distribution system for child pornography. *Ferber*, 458 U.S. at 759. "[T]he harm to the child is exacerbated by [the] circulation" of child pornography. *Id.* "[T]he distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." *Id.* The United States Supreme Court has also found that child pornography impacts a child's reputational interest and emotional well-being. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002).

¶ 25    In *People v. Fugate*, 2024 IL App (4th) 240254-U, the court also considered the argument that possession of child pornography did not constitute a "threat" in the context of pretrial release. The court noted that:

> "At their core, then, laws which criminalize the possession, distribution, or creation of child pornography are concerned with the welfare of the child victim depicted. *** The dissemination of child pornography, however, is viewed as potentially further victimizing the child depicted. *** It has been noted that there is a developing consensus that a relationship exists between even the possession of child pornography and its creation, as the former may stimulate the latter. [Citation.]
>
> In the context of pretrial detention decisions for defendants charged with dissemination of child pornography, it is appropriate for circuit courts to focus on the question of the defendant's potential dangerousness from this perspective. This

11

is also the relevant perspective in assessing what conditions might adequately guard against the threat presented." *Id.* ¶¶ 26-27.

¶ 26    Further, in *Jackson*, 2024 IL App (4th) 240441-U, the appellate court recently held that possession of child pornography could be categorized as a crime of violence. The court reasoned that the possession of child pornography was inextricable from the act of creating it, as in order for the defendant to possess such materials, child sexual abuse had to have occurred. *Id.* ¶ 18. The abuse, the court reasoned, had already occurred, and the children depicted are real victims who experienced real abuse. *Id.* The court found it reasonable to conclude that a defendant who would continue to seek out sexual abuse material would thus pose a real and present physical threat to persons in the community. *Id.* Specifically, to those children that have fallen or may fall victim to those who would abuse them to create further material for the defendant's consumption. *Id.*

¶ 27    Whether or not the threat of harm posed by the possession of child pornography is termed a violent crime, it is a serious crime that imposes harm on the physical, physiological, emotional, and mental health of the individual child whose abuse is depicted; children who may be more likely to be abused based on the viewing of child pornography, and children whose sexual abuse becomes more likely based on the creation of a market for the depiction of child sexual abuse. It is axiomatic that the ways in which crime harms individuals and the community at large were intended by the legislature to be considered in a circuit court's determination of a defendant's real and present threat to safety to warrant pretrial detention.

¶ 28    Having determined that possession of child pornography is not inherently outside of the scope of "dangerousness" under the Code, and the types of harms that are imposed on individuals and the community may pose a real and present threat to safety, we turn our analysis to whether the trial court abused its discretion in finding the defendant in the present case posed a threat to

12

any person or the community. At the defendant's pretrial detention hearing, the circuit court expressed its reasoning thoroughly. In support of its order, the circuit court specifically stated:

"Regarding the lack of prior record, the Court would note this defendant has no record. Court would also note that these types of crimes are often committed in privacy. They are on-line crimes committed in the privacy of home. So the lack of a prior record does not deprecate the seriousness of this offense. The Court would also note there were comments made about this defendant ceasing or stopping his activity back in August of 2023. The Court would note that this occurred after the [Kik] account was suspended and that the defendant had been alleged to have viewed and possessed over 100 [images] prior to that by his own admission. Court does believe there is a threat to—a real and present threat to persons in the community, those being some of the youngest persons unable to protect themselves. ***

The Court noting that defendant, not only possessed multiple items of child pornography that showed actual sexual abuse of minor children with the children being infant in age and also a toddler, but also possessed these items with the intent to distribute, sell or trade these items. Child pornography is a crime that the victim will experience his or her entire life. Sharing of these digital images knows no boundaries, no limitation of how often these imagines can be shared, how many times they can be viewed. Each image being viewed or shared is re-victimizing these victims."

¶ 29  The circuit court considered the nature and circumstances of the offenses charged, the statutory factors, and the arguments of counsel. The circuit court found, based in part on the

13

defendant's repeated pattern of behavior in accessing child pornography, his intent to distribute child pornography, and the circuit court's acknowledgment of the repeated re-victimization of the children depicted each time the material is viewed, that the defendant posed a danger under the meaning of the Act. After a thorough review of the record on appeal, along with any memoranda submitted, we find that the circuit court's oral pronouncements made at the detention hearing, in conjunction with the findings included in its written order, and its determination that the defendant posed a threat to persons or the community, were not against the manifest weight of the evidence.

¶ 30                           B. Conditions of Release

¶ 31    We next address the defendant's argument that the circuit court erred in finding that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community. The defendant argues that any risk posed by the defendant could be effectively mitigated by imposing conditions including that the defendant refrain from any internet use and surrender all internet-capable devices in his possession. The State responds that the circuit court properly relied on the specific statutory factors as required by the Code. We agree.

¶ 32    As previously stated, section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2022)) sets out the factors which a trial court is to consider in determining which conditions of pretrial release, if any, will reasonably ensure the safety of persons or the community and the likelihood of compliance by a defendant with the conditions of pretrial release. In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be

14

posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.*

¶ 33    The circuit court considered the statutory factors. It noted that the defendant had the ability to create accounts to trade in child pornography. The circuit court reasoned that internet access would be a difficult thing to monitor 24 hours a day and the act of retrieving these images, viewing these images, selling these images; again, victimize the children who are the subject of child pornography. The circuit court considered the removal of electronic devices from the defendant's home and found that no order restricting the defendant from possessing such devices or accounts used to traffic in child pornography could be monitored, given the ease with which devices and accounts are procured, especially where the defendant lived alone in a remote area. The circuit court determined that there was no monitoring that would effectively mitigate the danger posed by the defendant.

¶ 34    The defendant cites *People v. Reamy*, 2024 IL App (2d) 240084-U, as persuasive authority for "guidance on the issue of conditions for a defendant charged with both possession and dissemination of child pornography." In that case, the defendant was charged with possessing and disseminating child pornography. *Id.* ¶ 4. The trial court in that case found that the defendant could be released on pretrial supervision and, in addition to the mandatory conditions of pretrial release, be placed on electronic home monitoring and an order not to have contact with minors or the internet. *Id.* ¶ 9. The State appealed, and the court affirmed the circuit court's determination, finding that the circuit court's release with conditions order was not an abuse of discretion. *Id.* ¶¶ 9, 23. *Reamy* held that the argument that any criminal defendant charged with child pornography should *per se* be denied pretrial release runs contrary to the Act. *Id.* ¶ 23.

¶ 35    Here, the circuit court did not determine that any criminal defendant charged with child pornography should be denied pretrial release. The circuit court did not rely solely on the charge of child pornography in making its detention determination; however, it did consider the nature and circumstances of the charges. Further, the circuit court considered the statutory factors, and specific facts including the defendant's admissions, his ability to create accounts to access and trade in child pornography, the defendant's remote location, and the court's inability to monitor whether the defendant would have access to the internet.

¶ 36    The defendant additionally cites to *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required."). While we agree with the proposition that "more is required" than the bare and conclusory facts necessary to state an offense, it is clear that the full picture of underlying facts is relevant to the circuit court's detention decision. See *People v. Romine*, 2024 IL App (4th) 240321, ¶ 19 ("[T]he evidence the court uses to determine the nature and circumstances of the offense may also shed light on the other statutory factors governing dangerousness and conditions of release ***.").

¶ 37    Similar to *Fugate*, 2024 IL App (4th) 240254-U, ¶ 38, "[w]e decline to accept any reading of *Stock* and its progeny that would conclusively prohibit a court, under the right circumstances, from relying solely on the nature of the charges to conclude that conditions of release would be inadequate to mitigate the threat posed by a defendant." For our purposes, however, we conclude that the circuit court's thorough considerations of the specific facts of this case and the effectiveness of the available conditions of release were sufficient to distinguish this case from *Stock* and *Reamy*. It is clear from the context of the hearing and the circuit court's findings and

16

determinations that it was focused on the potential lack of compliance by this particular defendant based on his prior use of the internet, his ability to create and utilize online accounts for procurement and trade in child pornography, and the difficulty posed in monitoring a defendant who lives alone in a remote location. See *Fugate*, 2024 IL App (4th) 240254-U, ¶ 41 ("[T]he inquiry into a defendant's potential compliance with conditions of release must always be individualized." (citing 725 ILCS 5/110-10(b) (West 2022))). We therefore find the circuit court's finding that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community was not against the manifest weight of the evidence.

¶ 38     We have thoroughly reviewed the record on appeal in this matter. The circuit court made an individualized finding to revoke the defendant's pretrial release and detain the defendant after considering the facts presented, arguments made by counsel, and the statutory factors. The circuit court's judgment denying the defendant pretrial release was not arbitrary, fanciful, or unreasonable such that no reasonable person would agree with the position adopted by the circuit court. Therefore, the circuit court's order denying pretrial release was not an abuse of discretion.

¶ 39                                      III. CONCLUSION

¶ 40     For the foregoing reasons, we affirm the April 4, 2024, detention order of the circuit court of Douglas County.

¶ 41     Affirmed.

17