NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250375-U

NO. 4-25-0375

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Schuyler County |
| BILLY RAY RUPLE JR., | ) | No. 25CF15 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark L. Vincent, |
| | ) | Judge Presiding. |

---

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's order denying defendant pretrial release, finding the State proved by clear and convincing evidence defendant posed a real and present safety threat and there were no less-restrictive means other than pretrial detention to mitigate that threat.

¶ 2    Defendant, Billy Ray Ruple Jr., appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/art. 110 (West 2024)), commonly known as the Pretrial Fairness Act. Defendant filed a memorandum in support of his motion for relief with this court in accordance with Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). He argues the trial court's decision should be reversed because the State failed to prove he posed an unmitigable threat to the safety of persons or the community. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On March 20, 2025, defendant was charged by information with 12 counts of

child pornography (referred to hereinafter as child sexual abuse material (CSAM)): 2 counts for

the dissemination of a depiction by computer or other visual medium (computer files) (720 ILCS

5/11-20.1(a)(2) (West 2024)) and 10 counts for the possession of such depictions (*id.* § 11-

20.1(a)(6)). On the same day, the State filed a verified petition to deny defendant pretrial release,

alleging he was charged with a sex offense enumerated in article 11 of the Criminal Code of

2012 (Criminal Code) (720 ILCS 5/art. 11 (West 2024)) and his pretrial release posed a real and

present threat to the safety of any person or persons or the community based on the specific,

articulable facts of the case. See 725 ILCS 5/110-6.1(a)(5) (West 2024). A hearing was held the

following day.

¶ 5          The State proffered the following evidence in support of the petition. The State

explained this case began with "an investigation on the eDonkey network, which is a

peer-to-peer file sharing application or client program that is known for offenders sharing child

sexual abuse material." Investigators connected to a specific Internet Protocol (IP) address that

was "identified as being of investigative interest to [CSAM] investigation." On multiple dates

between June and September of 2024, a "target device" at that IP address acknowledged

possession of CSAM files downloaded from the eDonkey network. On October 5, 2024, law

enforcement obtained a search warrant for the subscriber information associated with the IP

address, which was revealed to be defendant at his home address in Rushville, Illinois.

Defendant was taken into custody and, after being advised of his *Miranda* rights (see *Miranda v.*

*Arizona*, 384 U.S. 436 (1966)), he admitted he lived alone at his address in Rushville and

confirmed the name of his Internet service provider, which corresponded with the search warrant

records. Devices in defendant's home were seized and found to contain numerous additional CSAM files. The eDonkey client found on defendant's devices had its default settings for resharing downloaded files altered to the minimum allowable amount, indicating that the user knew the capabilities and functionality of the program, including that the network required a minimum level of resharing of downloaded files. The client's search history had been used with search terms likely to reveal CSAM (such as "PTSP, pre-teen soft porn," "[e]arly teen, lowly porn, 10 Y"). Numerous "artifacts" were found during the forensic investigation of defendant's devices, including one showing that over 9,000 CSAM files had been shared with other users, numerous file names were graphically descriptive of CSAM (such as "!New!(Pthc)Niece Series2 (5Y Full Penetration)" and "7yo Stacy *** Crying Anal Ass Raped Fucked Creampie"), and the earliest date which the client had been sharing files with other users on eDonkey was five years ago (June 2020).

¶ 6       The State proffered documents previously provided to the trial court, including "digital forensic reports, investigative reports, complaints for search warrants, [and] actual search warrants." These documents are not part of the record on appeal.

¶ 7       The trial court considered the pretrial investigation report as well, which indicated defendant was single, never married, had no children, and lived alone. He was college educated and had been honorably discharged from the military after four years of service. Defendant worked as a security therapy aide at the Rushville Treatment and Detention Facility, which is operated by the Illinois Department of Health and Human Services. Defendant had no history of drug or alcohol use but is diabetic and takes medication for this condition. His score on the Virginial Pretrial Risk Assessment Instrument-Revised (VPRAI-R) was level 1, which is low risk.

¶ 8          The State argued defendant continued to revictimize the children depicted in the files by downloading and sharing the files, and the investigation and forensic analysis of defendant's devices remained ongoing. Further, the State noted defendant's conduct was "exceptionally worrisome" given his employment as a security therapy aide at a facility "for those who have been deemed as sexually violent persons by various courts." The State argued it would be impossible to implement meaningful monitoring restrictions on electronic devices or place sufficient conditions that would limit defendant's access to such devices. Defendant's computer literacy, given his experience as a computer aide programmer while in the military, was also worrisome if he were to be released.

¶ 9          Defense counsel argued defendant should be allowed pretrial release because there were conditions that would mitigate any threat he posed. In support, defense counsel proffered defendant was a 44-year-old veteran who had no issues with drugs or alcohol. Further, there was nothing in the record to suggest defendant created the depictions of CSAM found on his devices or that "these are local children involved in these depictions." Therefore, defense counsel argued conditions such as house arrest, GPS monitoring, prohibition from having access to the Internet, social media, and smart phones, and other monitoring by pretrial services would provide sufficient protection of the public.

¶ 10         The trial court granted the State's motion to deny defendant pretrial release, finding the State met its burden on all the requirements set forth in the Procedure Code. Regarding whether there existed any conditions or combination of conditions that would mitigate any threat posed by defendant to warrant his pretrial release, the court found there were none. The court concluded any conditions, including house arrest and restrictions on defendant's access to electronic devices, would not sufficiently prevent defendant from continuing to engage

with CSAM. The court acknowledged defendant's military service and lack of criminal history. However, the court expressed concerns about defendant's ability to defeat any restrictions because evidence showed he was "technologically savvy," as well as the "sheer volume" of materials defendant had viewed and disseminated over several years. A written order denying defendant's pretrial release was entered on March 21, 2025, wherein the court summarized its ruling that the State met its burden of proof in accordance with the statutory requirements.

¶ 11　　　　Defendant filed a motion for relief, arguing the trial court (1) erred in finding he posed a real and present threat to the safety of any person or the community because the crime charged does not identify any specific person in the community potentially threatened by him; (2) erred in determining there were no reasonable conditions of release that could have been placed on defendant, such as home confinement, pretrial services monitoring, or prohibiting access to the Internet and electronic devices; and (3) failed to give proper consideration to numerous factors, including defendant's health issues, his lack of criminal history, his low score on the VPRAI-R, his lack of drug or alcohol use, the facts he was a lifelong resident of the area, lived alone and had a mortgage to pay, had two rescue dogs in his care, and did not "participate in any of the alleged [CSAM]."

¶ 12　　　　After hearing the arguments of the parties, the trial court denied defendant's motion for relief. In addressing the real and present threat to the safety of any person or the community, the court found that the nature of the charges, possession and dissemination of CSAM, did pose such a threat to the unnamed victims in the community due to the nature of the victimization of these minors via the Internet. The court stated the fact defendant did not participate in the making of the CSAM materials did not "diminish or remove the fact there [was] a real and present danger to children as victims of [CSAM]," particularly given

defendant's dissemination of the material as charged in this case. The court further acknowledged it considered the pretrial investigation report, including defendant's background and his low risk assessment on the VPRAI-R but determined the nature and number of charges in this case and the length of time it had been occurring outweighed that score. Regarding possible conditions of release, the court stated it considered the possible conditions available for pretrial release but reaffirmed that because of defendant's knowledge of the Internet and computer technology, there remained a substantial risk that he could continue to engage with these materials even if released.

¶ 13   This appeal followed.

¶ 14         II. ANALYSIS

¶ 15   We initially note that Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024) required the decision in this case to be filed within 100 days of filing the notice of appeal unless good cause for the delay is shown. We find good cause in this case as an internal administrative matter delayed the issuance of this decision.

¶ 16   Under the Procedure Code, it is presumed all criminal defendants are entitled to pretrial release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024). The State may petition to overcome this presumption for a defendant charged with a detainable offense as enumerated in the statute. *Id.* § 110-6.1(a). The Procedure Code provisions applicable in this case required the State to prove by clear and convincing evidence (1) the defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and (2) no condition or combination of conditions would mitigate that safety threat. *Id.* §§ 110-2(b), 110-6.1(a)(1), (e)(3)(i). A finding of dangerousness alone does not automatically warrant pretrial

detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 (finding pretrial detention requires more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. "[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 17 Defendant does not dispute he was charged with a detainable offense under article 11 of the Criminal Code. See 720 ILCS 5/110-6.1(a)(5) (West 2024). Rather, defendant's argument on appeal is twofold: (1) he argues the trial court erred in denying him pretrial release because his alleged possession and dissemination of CSAM did not pose a threat to anyone's "safety" as contemplated by the Procedure Code because there was no evidence to suggest he posed a threat of physical harm or violence and (2) he contends the trial court erred in concluding any threat he may pose could not be mitigated by a condition or combination of conditions, such as home detention and GPS monitoring.

¶ 18 A. Possession and Dissemination of CSAM as a Safety Threat

¶ 19 Defendant argues the possession and distribution of CSAM are not violent crimes; thus, a defendant charged with those crimes does not threaten the safety of persons or the community. However, in *People v. Jackson*, 2024 IL App (4th) 240441-U, we specifically rejected this argument, and defendant has failed to persuade us to change our position on this

issue.

¶ 20    In *Jackson*, this court held "a defendant charged with possession of [CSAM] does indeed pose a physical danger to persons or the community." *Id.* ¶ 13. In so holding, we determined the legislature clearly "considered the dangers posed by possession of [CSAM] sufficient for pretrial detention when it specifically listed that offense as eligible for detention." *Id.* ¶ 16. For further support the legislature intended to treat the dangers of sex offenses as a basis for pretrial detention, we noted "the nature and circumstances of the offense" (including whether the offense was a crime of violence or a sex offense) was included in the nonexhaustive list of factors to be considered when determining dangerousness under the Procedure Code. *Id.* ¶ 17 (citing 725 ILCS 5/110-6.1(g) (West 2022)). We also examined the harm posed by the possession of CSAM, stating as follows:

> "Although defendant suggests possession of [CSAM] is not a crime of violence
> because the mere possessor of such materials had no direct role in creating them,
> we are unconvinced. Indeed, we find the possession of [CSAM] inextricable from
> the act of creating it. Put simply, in order for defendant to possess materials
> depicting child sexual abuse, child sexual abuse had to have occurred. The abuse
> endured by these children, created for those, like defendant, who consume
> [CSAM], is not a hypothetical possibility that may or may not come to pass. It has
> already happened; it in fact happened 36 times to produce the 36 photos and
> videos in defendant's possession. The children shown in these materials, though
> unidentified and unknown to either defendant or the court, are nevertheless real
> victims who experienced real abuse. We find it reasonable to conclude a
> defendant who would continue to seek out child sexual abuse material if granted

pretrial release, would therefore pose a real and present physical threat to persons in the community, specifically the minors that have fallen or may fall victim to those who would abuse them to create material for that defendant's consumption." *Id.* ¶ 18.

¶ 21 As we noted in *Jackson*, we note again here our conclusion aligns with our past cases, as well as those of other Illinois appellate courts. *Id.*; see *People v. Schulz*, 2024 IL App (1st) 240422, ¶¶ 25-26 (affirming a defendant who possessed and disseminated voluminous amounts of CSAM via the Internet posed a real and present safety threat); *People v. Collins*, 2024 IL App (2d) 230577-U, ¶ 20 (finding no error occurred where a defendant charged with possession of CSAM was found dangerous under the Procedure Code); *People v. Phillips*, 2024 IL App (4th) 240372-U, ¶ 20 (finding no abuse of discretion in determining that a defendant charged with possession of CSAM was dangerous); *People v. Schrock*, 2024 IL App (5th) 240507-U, ¶¶ 27-28 (determining possession of CSAM imposes harm on the children whose abuse is depicted and defendants charged therewith may be found to pose a real and present threat to their safety).

¶ 22 Having already concluded in *Jackson* that possession of CSAM is not "inherently outside the scope of 'dangerousness' under the [Procedure] Code" (*Jackson*, 2024 IL App (4th) 240441-U, ¶ 20), we turn to the trial court's decision based on the specific articulable facts in this case. Defendant's contention the threat of him obtaining and disseminating more CSAM is not a real and present threat to the safety of children or anyone else is patently wrong. The State proved defendant possessed and disseminated CSAM that showed victims under the age of 13, who are vulnerable members of the community. The graphic CSAM descriptions in some of the computer file names as stated in the information suggest a violent and abhorrent violation of

young girls. Defendant's behavior was dangerous to children because his crimes were easily committed via the Internet from the privacy of his home by simply using a computer. The record shows defendant disseminated a large volume of CSAM to others, thus revictimizing the very young children not only by sharing with others but by fueling the demand for more CSAM. Therefore, we conclude the State proved by clear and convincing evidence defendant posed a clear and present threat to persons or the community under the Procedure Code.

¶ 23　　　　　B. Conditions of Release to Mitigate Defendant's Safety Threat

¶ 24　　　　Defendant contends the trial court erred in concluding that any safety threat he posed could not be mitigated by conditions of pretrial release, such as home detention or GPS monitoring. Defendant fails to explain how such conditions would prevent the threat of him possessing and disseminating CSAM if released. Instead, defendant argues that if he did so, it would not be a threat to anyone's safety but would be a basis for revoking his pretrial release; thus, it should not be a basis for denying him pretrial release in the first instance. We are unconvinced.

¶ 25　　　　The task before us is to determine, *de novo*, based on defendant's background, characteristics, and the specific facts of the case, whether any combination of conditions could mitigate the safety threat and justify defendant's release. See *Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 26　　　　The record reveals defendant engaged in not only the possession but also the dissemination of a voluminous amount of CSAM via the Internet for several years. The forensic examination of his computer showed he was intimately familiar with usage of a peer-to-peer network (eDonkey) commonly used for the acquisition and dissemination of CSAM and had shared 9,000 files with others. This pattern of conduct evinces a strong predilection for CSAM

and defendant's capability of accessing and distributing such materials over an extended period of time without being detected. Defendant's experience with computers, the fact he lives alone, and the sheer volume of CSAM content he possessed and shared support the conclusion there remains a substantial risk he would continue to engage with these materials if released and any conditions endeavoring to prevent his access to the Internet or computers would be insufficient to protect children or community under the circumstances. We note home confinement would require defendant to stay in the very location where his conduct was carried out. Further, we reiterate these vulnerable children are revictimized every time the CSAM content is viewed and shared, and, given the specific articulable facts in this case, any conditions, including electronic monitoring or efforts to deprive defendant of access to computers or the Internet, would be insufficient to mitigate the risk of this happening again. Therefore, we conclude there exists no condition or combination of conditions to mitigate the threat posed by defendant.

¶ 27                                    III. CONCLUSION

¶ 28           For the reasons stated, we affirm the trial court's judgment.

¶ 29           Affirmed.