2024 IL App (2d) 240478-U
No. 2-24-0478
Order filed December 2, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-678 |
| DAVID W. CURRIER, | ) ) ) | Honorable Tiffany E. Davis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

## ORDER

¶ 1    *Held*:  The trial court did not err in denying defendant pretrial release where the trial court's finding that no combination of conditions could mitigate the threat defendant posed to the community of accessing and disseminating child pornography was based on defendant's sophisticated knowledge of computer systems and the identification of over 81,000 files of suspected child sexual abuse materials. Affirmed.

¶ 2    Defendant, David W. Currier, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the following reasons we affirm the judgment of the trial court.

¶ 3                                          I. BACKGROUND

¶ 4    On July 16, 2024, defendant was arrested and charged via complaint with 1 count of child pornography (reproduce or distribute) (720 ILCS 5/11-20.1(a)(2) (West 2022)) and 21 counts of child pornography (possess visual reproduction on computer) (*id.* § 11-20.1(a)(6)).

¶ 5    On July 17, 2024, the State filed a verified petition to deny pretrial release pursuant to section 110-6.1 of the Code. A hearing was held on the State's petition that same day.

¶ 6    At the hearing the State presented the police synopsis, which stated as follows. On December 6, 2023, Woodstock police conducted an online investigation into the sharing of child pornography or child sexual abuse materials (CSAM). The investigation was conducted on the BitTorrent network, which is a peer-to-peer file sharing client.[1] BitTorrent downloads are facilitated by ".torrent" files, which are small index files that contain metadata about the files and folders to be distributed. The BitTorrent client enables a user with a torrent file to connect to other users whose systems contain the associated data files and allows the files to be downloaded in pieces from multiple users' systems at once, increasing network efficiency. Users whose systems contain the data files and allow the client to share them with others are known as "seeders."

¶ 7    A suspect device, which was associated with a torrent file that had been previously identified as being of interest to child pornography investigations, connected with the police investigative computer via the BitTorrent client. The suspect device acknowledged that it possessed 5 files consisting of 646 pieces and, while connected, the investigative computer was able to download 13 pieces. Although the investigative computer did not download a complete file, from the partially complete files police were able to identify one of the files on the suspect device as child pornography. Two other investigators elsewhere in the State were also able to connect to the suspect device and download files containing child pornography.

¶ 8    A grand jury subpoena was issued to Comcast seeking subscriber information associated

---

[1]A "client" is a program that requests and receives services or information from another computer.

with the IP address of the suspect device. The subscriber was identified as David Currier with an address in the city of McHenry. Police determined that defendant and his wife were the sole occupants of the home.

¶ 9    On February 13, 2024, a search warrant was executed at defendant's address, focusing on computers and electronic devices. Digital forensic examiners (DFE) from the Illinois Attorney General Internet Crimes Against Children Task Force assisted in the execution of the warrant. Defendant was home at the time the warrant was executed. His wife was not present.

¶ 10    A home office was located just off the entryway and contained an office computer that was powered on. The DFEs determined that defendant's network and hardware were far more advanced than what is typically found in a residence. It was determined that the office computer was networked with two other computers in the basement, a "TrueNAS" network attached storage server and another Windows computer that was running BitTorrent software. The computer running the BitTorrent software was actively seeding pornographic files.

¶ 11    The DFEs observed that the storage server was encrypted, and it was fortunate that Currier had been logged into the system when the warrant was executed, otherwise the investigators would have been prevented from accessing the data. The digital forensic examiners also determined that the systems were using a Virtual Private Network (VPN) and the Tor web browser, both of which are commonly used to access the internet anonymously outside the detection of law enforcement.[2]

---

[2]Virtual Private Network services provide proxy servers that route web traffic through a third-party, allowing users to circumvent geo-blocking and making it more difficult to track the end user's activity. The Tor network routes web traffic through random points in the network making it more difficult to track users' activity and allowing access to the "dark web," which is

The DFE's stated that a VPN used in conjunction with a BitTorrent client could enable the systemic sharing of files while concealing the user's IP address and thus identity.

¶ 12    In the basement was a computer work area with a 3D printer, soldering station, and large amounts of computer hardware. The DFEs determined that defendant had built the computers himself.    An onsite "preview" of the office computer revealed a video containing child pornography.

¶ 13    Due to the large amount of data and complexity of the systems, several of defendant's devices were seized and turned over to the DFEs for analysis. Defendant was interviewed by police and declined to provide the password for his encryption software.

¶ 14    On April 19, 2024, the DFEs issued their report. Over 81,000 suspected CSAM files were located on defendant's devices, including 50 ".torrent" files, 65 videos, and 70,000 images. Over 12,000 files were sent to the National Center for Missing and Exploited Children law enforcement services portal, which compares submitted identifying hashes, to a database of known CSAM images. A preliminary report indicated that 95 files had an identified child and over 7,000 files were recognized hashes.

¶ 15    Defendant argued that he was 70 years old and had multiple health conditions. He had no prior criminal history and would abide by any conditions of release the court would impose, such as a bar on defendant accessing the internet or possessing any electronics which could access the internet.

¶ 16    The trial court granted the State's petition to deny pretrial release. Regarding conditions,

---

not indexed by search engines. Tor is often associated with illicit activity such as drug sales and the distribution of child pornography.

the trial court stated that, because of defendant's sophisticated knowledge of computers, no conditions could mitigate the threat posed by defendant. "The court has no way of setting any type of condition in which it could monitor and ensure that the defendant could not outsmart or outwit anybody monitoring to be able to access the Internet[.]" The trial court also pointed out that the only reason the State possessed the evidence it did was that defendant had disconnected from his VPN and he was logged into his system at the time the search warrant was executed. The court further reasoned that based on the volume of files in his possession, it did not believe defendant would comply with conditions of pretrial release.

¶ 17    On August 7, 2024, defendant filed a motion for relief from pretrial detention pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). A hearing was held on August 9, 2024. Defendant again argued that there were conditions of release that could mitigate the threat posed by defendant, such as a complete bar on accessing the internet and possessing internet-capable devices. During defendant's argument the trial court asked how such a bar would be enforceable, noting that "there is Wi-Fi everywhere" and that the court could not assign someone to follow defendant 24 hours a day to prevent defendant from accessing the internet. The trial court ultimately denied the motion and defendant timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, defendant argues that the State failed to show by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. Defendant does not challenge the trial court's findings regarding the commission of a qualifying offense or dangerousness.

¶ 20    On an appeal from an order denying a defendant pretrial release, we review whether the trial court's factual findings were against the manifest weight of the evidence. *People v. Trottier*,

2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 21    All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving otherwise by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2022). To deny a defendant's pretrial release, the State must show (1) that the proof is evident or the presumption great that the defendant has committed an eligible offense, and (2) the defendant poses a real and present threat to the safety of any person or persons or the community, which (3) no condition or combination of conditions can mitigate. *Id.* The trial court's finding that no combination of conditions can mitigate the threat posed by a defendant must be based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(3). The base allegations which comprise the elements of the charged offense are not sufficient to establish such on their own. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release."). However, the alleged facts which comprise the basic elements of the charged offense can be relevant proof establishing that no conditions can mitigate the threat posed by defendant. *Id.*

¶ 22    In considering whether and which conditions of pretrial release will reasonably ensure the safety of any other person or the community and the likelihood of compliance by the defendant with all conditions of pretrial release, the trial court considers several factors. These include the nature and circumstances of the charged offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, the history and characteristics of the defendant,

the nature and seriousness of the threat posed by the defendant based on the specific articulable facts of the case, and the risk of defendant obstructing the criminal justice process. 725 ILCS 5/110-5(a) (West 2022).

¶ 23    Defendant here begins by distinguishing the instant facts from those in *People v. Jackson*, 2024 IL App (4th) 240441, which the State cited multiple times before the trial court. In *Jackson*, the trial court considered the defendant's previous violation of an order of protection and failure to complete probation as an indication that he would not comply with conditions of pretrial release, whereas defendant here argues that he has no previous criminal history. *Id.* ¶ 20.

¶ 24    In contrast to *Jackson*, defendant argues that several statutory factors favor his pretrial release. Defendant is a 70-year-old retiree with no previous criminal history and significant health issues who scored a zero on his pretrial risk assessment. Further, defendant has strong ties to the community, is a lifelong resident, is married, and has children and grandchildren who live in the area.

¶ 25    Defendant further argues that in the five months between the execution of the search warrant and his arrest, he had remained in the area, voluntarily gotten rid of any devices which could access the internet, and began "intensive psychiatric treatment" for depression and mental illness. Defendant maintains that there was no indication that he accessed the internet following the search warrant, no indication that he produced any of the material at issue, and no indication that any of the victims resided in the local community.

¶ 26    Defendant additionally argues that his proposed conditions of pretrial release, including refraining from accessing or possessing any devices capable of accessing the internet, are sufficient to mitigate the threat he poses. Defendant further argues that the trial court's reasoning at the hearing on his petition for relief that the only way of ensuring defendant's compliance with a

prohibition against internet use is to monitor him 24 hours a day is absurd and could be applied to any crime as a basis for denying release. Finally, defendant maintains that the trial court's reliance on his use of a VPN as a reason for denying pretrial release is unfounded, as VPN software is used by billions of people.

¶ 27    In response, the State argues that the trial court's decision was supported by the evidence in that defendant could borrow a cellphone from someone to access the internet, and that defendant had used a VPN to access the dark web.

¶ 28    Considering the statutory factors set forth in Section 110-5(a) of the Code, we agree with defendant that the factors set forth in subsection (3) tend to favor defendant's release. 725 ILCS 5/110-5(a)(3) (West 2022). Defendant was 70 years old, had no previous criminal history, and strong ties to the community. Additionally, there is no evidence that defendant poses a risk of obstructing justice, and the police took his computers after executing the search warrant.

¶ 29    Nevertheless, other factors support his pretrial detention. Regarding the nature and circumstances of the charged offense as well as the nature and seriousness of defendant's threat to others, the record demonstrates that defendant utilized a sophisticated system to obtain, store, and disseminate child pornography. This included not only the use of a VPN, but also encrypted storage and the Tor network to avoid detection. Additionally, over 81,000 suspected CSAM files were identified on defendant's systems, and the files had been categorized and sorted. Further, there was evidence that defendant had disseminated child pornography using BitTorrent software to seed files for download by others.

¶ 30    While defendant has no other previous criminal history, and the evidence does not show that he created the materials or directly abused a child, the size of defendant's collection of CSAM and the sophistication of his computer setup indicate that defendant had been engaging in this

conduct for some time and could do so again without detection. Based on the specific articulable facts of this case, the nature of the threat defendant poses to the community is that, regardless of any conditions imposed, if released he might obtain and disseminate additional child pornography, which revictimizes the children in those materials and drives demand for the creation of new child pornography and therefore new abuse. *People v. Schulz*, 2024 IL App (1st) 240422, ¶ 25.

¶ 31 As for defendant's argument regarding the trial court's discussion about monitoring defendant 24 hours a day to ensure he did not access the internet, this discussion occurred during argument on defendant's petition for relief before a different judge and did not form the basis of the trial court's detention order. Nevertheless, we do not take the trial court's statement to mean that the only way a defendant charged with child pornography could be released is if there were 24-hour monitoring. Instead, the trial court was reasoning that there was no mechanism under the facts of this case to effectively monitor defendant's compliance with the proposed conditions.

¶ 32 Rather, the basis for the trial court's finding that no set of conditions could mitigate the threat posed by defendant was defendant's extensive knowledge of computers coupled with the number of suspected CSAM files located on his computer. Based on the sophistication of defendant's setup, the trial court determined that there was no way of reliably monitoring defendant's compliance with a prohibition on internet use. The court further stated that, based on the quantity of suspected files, it did not believe that defendant would comply with conditions of release. Put another way, if released, defendant would have the ability to access child pornography again if he wanted to and, based on the number of files found in his possession, defendant would want to.

¶ 33 These findings were not general findings about the ubiquity of the internet as defendant would have it, but rather particularized findings based on defendant's particular knowledge and

the number of files recovered. Accordingly, the trial court's finding that no conditions could mitigate the threat posed by defendant was based on the specific articulable facts of the case and was not against the manifest weight of the evidence. Therefore, the trial court's order denying pretrial release was not an abuse of discretion.

¶ 34                                                    III. CONCLUSION

¶ 35     For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 36     Affirmed.