2025 IL App (2d) 250397-U
No. 2-25-0397
Order filed December 8, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 25-CF-1607 |
| | ) | |
| | ) | Honorable |
| JOHN C. DRESSEL, | ) | Michael G. Nerheim and |
| | ) | George D. Strickland, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in ordering defendant's pretrial detention where the State proved that he posed a real and present risk of danger to the community and no conditions of release could mitigate that risk.

¶ 2    Defendant, John C. Dressel, appeals from the trial court's order denying his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We affirm.

2025 IL App (2d) 250397-U

¶ 3                                    I. BACKGROUND

¶ 4      On July 15, 2025, defendant was charged with two counts of child pornography (dissemination with children under the age of 13) (720 ILCS 5/11-20.1(a)(2) (West 2024)) (Class X felony) and seven counts of possession of child pornography (*id.* § 11-20.1(a)(6)) (Class 2 felony).

¶ 5      On July 16, 2025, the State filed a verified petition to deny defendant pretrial release. 725 ILCS 5/110-6.1 (West 2024). The trial court held a hearing on the petition that same day. According to the State's proffer, police officers executed a search warrant on defendant's residence in Mundelein following tips that defendant's Snapchat, Discord, and Instagram accounts were flagged as having potential child porn activity. Officers searched all three accounts on defendant's computer, cell phone, and iPad. The search revealed numerous child pornography videos, including a video of an apparently disabled child with a tracheotomy tube being vaginally penetrated by an adult male "at least two times the size of the child," as well as a video of a large male anally penetrating a female child under the age of 10 as she cried in pain. The State asserted that the "vast majority" of the videos found in defendant's possession contained children under the age of four. Defendant used Telegram to trade and share the child pornography with other users. Officers also found a latex material buttocks sex toy in the shape and size of a small child in defendant's residence. The State's petition additionally alleged that defendant refused to open the door to his residence when officers arrived and that defendant had access to minor children in his residence.

¶ 6      The State also proffered that, after receiving his *Miranda* warning, defendant admitted that he had watched child pornography "for a couple years now" and downloaded the videos onto his

phone. He also admitted to chatting with others about child pornography on Telegram, Kik, and Discord.

¶ 7    The State argued that defendant posed a real and present threat of dangerousness because of the inherent dangerousness of child pornography, the content of the pornography defendant possessed, with the majority containing children under four years old, and his multiple devices and accounts used to view and disseminate the child pornography for two years. The State argued that no conditions could mitigate this dangerousness because of defendant's sophistication based on the facts, like the defendant in *People v. Glass*, 2025 IL App (2d) 250103-U.

¶ 8    In response, defendant's father testified that he lived with defendant at the same residence and he answered the door for the police, not defendant. He said that defendant was upstairs sleeping when the police arrived around 6 a.m. Defendant's father also testified that no minor children lived at the residence, just defendant, defendant's adult sister, defendant's mother, and himself. Defendant proffered that he was 22 years old, a high school graduate, and had a full time job working for an electric company. He said that the company is "standing by him" and will have employment if he is released.

¶ 9    Defendant conceded that the proof is evident and the presumption is great that he committed the charged detainable offenses. Relying on *People v. Milam*, 2024 IL App (2d) 240027-U and *People v. Reamy*, 2024 IL App (2d) 240084-U, defendant argued that the State failed to meet its burden regarding his dangerousness and whether conditions of release could mitigate his dangerousness. According to defendant, the State presented only generalized harms of child pornography and no facts specific to his case. Defendant requested conditions of release including electronic home monitoring (EHM), surrendering his electronic devices, taking away his internet access, and letting "the sheriff's office come into his house whenever."

¶ 10    After the hearing, the trial court granted the State's petition. It found that the State provided clear and convincing evidence that defendant committed the charged crimes. The trial court also found that the State proved defendant's dangerousness to the community. It noted the disturbing nature of the videos defendant allegedly possessed and disseminated, including the sexual assault that such conduct perpetuates, as well as defendant's sophistication based on his use of multiple devices and evading detection for two years. Finally, the trial court determined that no conditions of release could mitigate defendant's dangerousness. It relied on defendant's admission of watching the pornography for 2 years, the sex toy that was found in defendant's possession, and the multiple devices and social media platforms that defendant used. The trial court found that, based on defendant's sophistication, no conditions of release could adequately ensure that defendant did not have access to any devices given his actions and that the Lake County sheriff's monitoring program only runs from 9 a.m. until 5 p.m. Monday through Friday. In its ruling, the trial court found that defendant did not have access to minor children in his home, but it did not resolve the factual discrepancy regarding whether defendant refused to answer the door to evade police.

¶ 11    On August 7, 2025, defendant was indicted by a grand jury on two counts of child pornography (dissemination with children under the age of 13) (720 ILCS 5/11-20.1(a)(2) (West 2024)) (Class X felony) and five counts of possession of child pornography (*id.* § 11-20.1(a)(6)) (Class 2 felony). That same day, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). He argued that the trial court erred in finding him to be a danger to the community and that no conditions of release could mitigate any dangerousness he posed.

¶ 12    On September 8, 2025, the State filed an amended verified petition to detain. The trial court also conducted the hearing on defendant's motion for relief that same day. At the hearing, defendant presented affidavits from both his parents, with whom he would live if released, stating that they changed their home's internet password, removed the internet from any devices he might be able to access (such as a television), and set passwords on their personal devices. Defendant also argued that the grand jury indicting him on two less charges of possession of child pornography than initially charged weighed in his favor. Finally, defendant argued that spending seven weeks in custody shows that he is not of any risk to flout court orders and impressed upon him that court orders need to be followed.

¶ 13    In response, the State proffered a map from defendant's neighborhood. On the map, the State noted several daycares, playgrounds, gun stores, and schools. The State also argued that defendant could gain access to someone else's unsecured internet "if he just steps outside the door." The State also proffered a photo taken at defendant's residence showing the sex toy found in his possession.

¶ 14    After the hearing, the trial court denied defendant's motion for relief. It noted that the videos defendant was alleged to have possessed and disseminated were "as disturbing [of] child pornography as there could be. *** And any person who would find that to be entertaining has serious dysfunction." The trial could found that "this level of dysfunction doesn't go away" and expressed concern with defendant possibly obtaining a new device. The trial court additionally noted that EHM is not real time monitoring and didn't find monitoring by family members—who already failed to detect his prior actions—as reliable as the court would want. Defendant timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16　　The State asserts that our review is *de novo* because both parties proceeded solely by proffer. See *People v. Morgan*, 2025 IL 130626, ¶ 22; *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 18. However, because defendant presented the live testimony of his father, "the [trial] court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54; see *Glass*, 2025 IL App (2d) 250103-U, ¶ 29. "A finding is against the manifest weight of the evidence only if 'the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Relwani*, 2019 IL 123385, ¶ 18 (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)).

¶ 17　　Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community or prevent the defendant's willful flight from prosecution (*id*. § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 18　　Defendant did not file a memorandum, so his motion for relief serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Defendant does not contest that the State

provided sufficient evidence to prove that the proof is evident or the presumption is great that he committed the charged detainable offenses.

¶ 19    Defendant first argues that the State did not prove that he poses a real and present threat to the community. Defendant contends that the State presented, and the trial court relied upon, only the general harms of child pornography, not any specific articulable facts of his case. Of course, the bare allegations that a defendant committed a violent offense are insufficient to find that a defendant is dangerous under the Act. See *Reamy*, 2024 IL App (2d) 240084-U, ¶¶ 22-23. However, the record rebuts defendant's assertion that the finding of dangerousness was based solely on the generalized harms of child pornography.

¶ 20    While it is true that the State's petition included significant discussion of the general harms of child pornography, the petition also included numerous facts about defendant's alleged actions, on which the trial court relied. For example, the trial court specifically considered the disturbing nature of the videos and age of the victims found in the videos. It also considered that defendant used multiple devices to download and disseminate the videos undetected over the course of two years, which evidenced a level of sophistication. The trial court also considered mitigating factors, such as the defendant's age, lack of prior criminal history, and that he did not have access to minor children inside his home, but still found that defendant was a danger to the community given the specific facts of the charged offenses. Though the trial court considered some of the inherent harms of child pornography, the Act dictates that such considerations are proper when considered with the specific articulable facts of the case. See 725 ILCS 5/110-6.1(g). Defendant's specific actions, coupled with the fact that those actions help fuel demand for child pornography, revictimize the victim each time a video is viewed, and contribute to child abuse and exploitation, prove defendants dangerousness to the victims and the community. See *People v. Schulz*, 2024

IL App (1st) 240422, ¶¶ 25, 26. Because the trial court considered the specific articulable facts of this case, and such facts reasonably support a finding of dangerousness, we cannot say its finding was against the manifest weight of the evidence. See *People v. Collins*, 2024 IL App (2d) 230577-U, ¶ 20 (determining that it was not against the manifest weight of the evidence for the trial court to find a defendant charged with child pornography dangerous after considering the statutory factors).

¶ 21 Next, defendant argues that the State did not prove that no conditions or combination of conditions could mitigate his dangerousness. In support, defendant relies on *Milam* and *Reamy*. In *Milam*, the defendant was charged with three counts of possession of child pornography. 2024 IL App (2d) 240027-U, ¶ 4. The State relied solely on the inherent harms of child pornography and argued that the defendant thus posed an unmitigated threat to children in general. *Id.* ¶ 5. The trial court ordered the defendant's pretrial detention and this court reversed. *Id.* ¶¶ 6, 13. We held that after reviewing the entire record, there was "no evidence to determine that defendant is a danger to particular individuals or the community at large during pretrial release." *Id.* ¶ 12. The danger the trial court found was "the general threat to children that the act of producing and/or possessing child pornography generates," rather than considerations of the specific circumstances of the defendant's case. *Id.* ¶ 11.

¶ 22 In *Reamy*, the defendant was charged with eight counts of possessing child pornography and two counts of disseminating child pornography on Kik. 2024 IL App (2d) 240084-U, ¶ 4. The trial court denied the State's petition for pretrial release, finding that although the defendant posed a real and present threat to the community, there were conditions that could mitigate the defendant's dangerousness. *Id.* ¶ 9 The trial court ordered that the defendant be placed on EHM, have no contact with minors, not live in a home with minors, be prohibited from accessing the

internet and any internet-connected devices, and only leave the house for medical appointments. *Id.* This court affirmed. *Id.* ¶ 23. We determined that, under the circumstances of that case, it was not an abuse of discretion for the trial court to release defendant with those conditions. *Id.* ¶ 17. While the State argued that the conditions would not completely prevent the defendant from engaging in harmful behavior, "the relevant issue here is whether the conditions would *mitigate*—not completely prevent—any real risk and present risk defendant posed to individuals or the community." (Emphasis in original.) *Id.* ¶ 19. Because the State did not carry its burden of showing that there were no conditions that could mitigate the defendant's dangerousness, we were "left with no choice but to affirm the trial court's denial of the State's petition to detain." *Id.* ¶ 23.

¶ 23    Conversely, this court in *People v. Currier*, 2024 IL App (2d) 240478-U, and *Glass* addressed circumstances under which a defendant charged with child pornography may be held in pretrial detention. In *Currier*, the defendant was charged with possession and distribution of child pornography after over 80,000 files of child pornography were found on his computer. *Id.* ¶¶ 4, 14. The trial court granted the State's petition to deny pretrial release because the defendant's sophisticated knowledge of computers would not allow for any meaningful monitoring of his activities if released. *Id.* ¶ 16. This court affirmed because "the size of defendant's collection of [child pornography] and the sophistication of his computer setup indicate that defendant had been engaging in this conduct for some time and could do so again without detection." *Id.* ¶ 30. We determined that the trial court's findings "were not general findings about the ubiquity of the internet" but were based on the specific facts of the case, given the defendant's sophistication. *Id.*

¶ 24    Similarly, the defendant in *Glass* was charged with possession and distribution of child pornography after police found over 7,000 files of child pornography on 10 computers, several hard drives, and a large server inside the defendant's home. 2025 IL App (2d) 250103-U, ¶¶ 4, 14.

The trial court granted the state's petition to detain, noting the volume of the content on the defendant's 10 computers, the defendant's distribution of the materials, his knowledge of computers, and his ability to evade detection for a number of years. *Id.* ¶ 17. We affirmed, determining that the trial court's decision was based on the specific circumstances of the defendant's case, like in *Currier*. *Id.* ¶¶ 38, 39.

¶ 25 Here, the trial court's finding that no conditions could mitigate defendant's dangerousness was based on more than solely the general harms of child pornography and ubiquity of the internet, unlike *Milam* and *Reamy*. Rather, the trial court's decision was based on defendant's level of sophistication with multiple devices and multiple social media platforms that he used to access and distribute the child pornography undetected for two years. It also noted that the videos defendant possessed were "as disturbing [of] child pornography as there could be." Given these facts, the trial court found that conditions of release, such as EHM, surrendering his devices, and mandating no use of the internet were insufficient to mitigate his threat.

¶ 26 We therefore believe that this case is more similar to *Currier* and *Glass*. As in those cases, "[d]efendant's level of sophistication and pattern of conduct during the span of many years, evinces a strong predilection for child pornography, and the capability of accessing and distributing such materials without being detected." *Glass*, 2025 IL App (2d) 250103-U, ¶ 39. More specifically, defendant's use of multiple accounts across multiple devices to view and disseminate extremely disturbing videos undetected for two years, along with the sex toy found in his possession, evidence a serious dysfunction that does not simply go away because of court orders. Given defendant's specific circumstances, the trial court reasonably concluded that there was no meaningful way to successfully mitigate the threat defendant posed. We cannot say that such a conclusion was against the manifest weight of the evidence.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 29    Affirmed.