2025 IL App (4th) 250196

NO. 4-25-0196

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County. |
| EUGENE L. POPOVICH, | ) | |
| Defendant-Appellant. | ) | No. 25CF26 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court, with opinion.
Justices Zenoff and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1            Defendant, Eugene L. Popovich, appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Code); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). In accordance with Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), defendant relies upon his motion for relief filed in the trial court as his argument on appeal. In his motion for relief, defendant argues the court erred in determining there were no less restrictive means of protecting the community from the threat he may pose. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3          On January 28, 2025, defendant was charged by information with five counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2022)). According to the information, on or about January 24, 2025, defendant knowingly possessed film, videotape, or other similar visual reproductions or depictions by computer of any child, whom the defendant knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in any act of masturbation and depicted in a pose, posture, or setting involving the lewd exhibition of the child's unclothed breasts and vagina.

¶ 4          A probable cause hearing was held on January 28, 2025. At the hearing, the State proffered defendant had been arrested for a separate offense on January 24, 2025 (pending Livingston County case No. 25-CF-24), for indecent solicitation of a child and traveling to meet a child. See *id.* §§ 11-6, 11-26. During his arrest in that case, defendant's cell phone was found open on the front passenger seat of his vehicle. Detective Joshua Bray of the Pontiac Police Department obtained a search warrant for defendant's cell phone on January 27, 2025. A search of the phone revealed dozens of pornographic images and videos, at least five of which were clearly children under the age of 18, that qualified as child sexual abuse material or child pornography. The police have continued their investigation to determine the age of the individuals in the other images on the phone. There was also evidence on defendant's phone showing he had personally communicated with the females, and he was "paying these girls for their nude images." The State explained, "[Y]ou could see the text messages, you can see photos of Cash App transactions that correlated with then him receiving nude images of these individuals who appear to be under 18." Defendant, who was already in jail at the time, was arrested for the charges in this case.

¶ 5 On the same day, the State filed a verified petition to deny defendant pretrial release, alleging he was charged with a sex offense enumerated in the Code and that his pretrial release posed a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. See 725 ILCS 5/110-6.1(a)(5) (West 2022). A hearing was held that day.

¶ 6 The trial court acknowledged receipt of the pretrial services investigation report. In that report, defendant stated he lived alone, had no children, and was employed full-time as a warehouse worker. Defendant indicated he had no substance abuse history or mental health concerns. He scored a 4 out of a possible 14 on the Virgina Pretrial Risk Assessment Instrument-Revised (VPRAI-R). Defendant has no criminal history other than the two cases pending in Livingston County.

¶ 7 The State proffered the following regarding the Office of Statewide Pretrial Services (OSPS). "OSPS is a two-person unit here in Livingston County that monitors roughly between 80 to a hundred clients." The State indicated OSPS periodically meets clients as ordered by the trial court. These meetings are preferred to be in person but can also be phone check-ins. Although there would be individual follow up with clients who missed meetings, OSPS would not file a violation with the court until "multiple meetings" were missed. The State proffered OSPS also has the ability to do GPS monitoring, to track clients and set parameters for where they can go, and to use a secure continuous remote alcohol monitor (SCRAM) to monitor alcohol consumption if deemed appropriate. The State argued there is no other electronic monitoring available through OSPS. Most pertinent to this case, the State noted "OSPS does not have any specialized training in monitoring social media nor do they have any devices to aid them in doing so." Any monitoring would be limited to OSPS employees' personal knowledge of social media.

The State explained further, "if [OSPS] wanted to say, log on to the Internet to look, they would have to use their own social media accounts to monitor his social media." If defendant were to appear in person for a meeting, OSPS could ask to look through any electronic device defendant had with him. Otherwise, they have no other way to know or be able to see what defendant is doing on any electronic devices. Further, OSPS does not conduct home or employment visits because they are too dangerous; therefore, they would be limited to defendant's own "self-reporting" regarding compliance with restrictions, including any order of no contact with minors.

¶ 8        Defense counsel proffered that defendant would agree to abide by all pretrial conditions imposed on him, including reporting, monitoring, and testing by OSPS. Counsel contended OSPS could "monitor social media and other electronic media enough *** that could alleviate the dangerousness aspect here." He argued GPS monitoring is not really "a concern here unless the Court wanted to employ GPS monitoring to keep my client away from schools, churches and prohibited areas."

¶ 9        The State argued it met its burden of proving by clear and convincing evidence that the proof is evident and the presumption is great that defendant committed a detainable offense. The State noted defendant was arrested for traveling to Pontiac, Illinois, to meet a girl he believed to be 16 years old for the purpose of engaging in sexual acts. Further investigation revealed the phone that was in his possession at the time of his arrest contained "extensive amounts of pornography and images that could very, some that could very well be [child sexual abuse material], [and] some that were obviously clearly [child sexual abuse material]." The State also argued defendant posed a real and present threat to the safety of any minors, noting his active engagement with minors for his own sexual purposes, either traveling to meet a minor or communication with minors electronically to obtain nude photos of them. The State

acknowledged defendant's criminal record is limited to the two cases now pending but argued these being recent sex offenses "raises his dangerousness level," seeing the "correlation between where he is not only having dozens of images but also communicating and attempting to act out on those fantasies or attractions that he has."

¶ 10        Regarding conditions of release to mitigate his dangerousness, the State argued there were none. The State acknowledged defendant was not detained in the other pending case involving his arrest for indecent solicitation of a minor and traveling to meet a minor. Now, with this new information and new charges, the State "believe[d] he should have been detained then, but also believe[d] that it's still appropriate that he be detained under this case." The State noted OSPS has limited ability to monitor defendant's electronic devices and rejected defense counsel's claim that they could do so "well enough," arguing, "[W]ell enough is not enough." The State argued defendant engaged in conversations and solicited images from "real live individuals, and we have no way to mitigate that, to stop that, to prevent that, to prevent him from traveling to meet any of them in the future and engaging in any kind of sexual acts with them in the future."

¶ 11        Defense counsel argued there may be probable cause in this case, but the State failed to meet its burden that the proof is evident and the presumption great that he committed the offenses charged. He noted, despite the State's contention that five of the images are "clearly underage," all of the images were being investigated for "further opinion" regarding the age of the individuals. Defense counsel further contended the State failed to show that there were no conditions that could mitigate the real and present threat posed by defendant. Counsel pointed out that, the day before, another judge determined there were conditions that would mitigate the threat and allowed his pretrial release (pending Livingston County case No. 25-CF-24 for

traveling to meet a child and indecent solicitation of a child). He argued that "nothing has changed except that they found, now they have found evidence of possible child pornography on his phone." Defense counsel argued that does not increase the dangerousness to the point where no conditions could mitigate it. Counsel noted defendant's VPRAI-R score was 4, due to the other pending case, and, in actuality, his risk should be considered 2 or 0. Counsel reiterated defendant had no criminal history beyond the current cases, he was willing to abide by any conditions imposed by the trial court, and there was nothing in his background to indicate he would not cooperate.

¶ 12 The trial court granted the State's motion to deny defendant pretrial release, stating it had considered all of the factors set forth in the Act. The court considered the nature and circumstances of the offenses, noting defendant was charged with five felony counts of child pornography, which the court characterized as "extremely concerning and serious." The court disagreed with defendant's argument that nothing had changed since the detention hearing held the day before in the other pending case, finding, "[a]ctually, a lot has changed since yesterday although, obviously, I wasn't the Judge that heard it, but there are now multiple victims of this defendant in connection with the child pornography charges." The court determined this "changes things significantly" because "we're dealing with a person who has multiple victims, had access, I share the State's concern that if this defendant is able to communicate directly with victims," and "it certainly elevates the concern when this defendant is in direct contact with these minors and paying them to send images to him."

¶ 13 The trial court acknowledged defendant's lack of a criminal history but stated "that factor alone doesn't mean a whole lot," as many defendants appearing on such cases do not have prior records. The court also acknowledged defendant's VPRAI-R score of 4, noting that it

- 6 -

was largely due to there being another pending case. The court expressed its concern that even more frequent monitoring than what may have been ordered in the other pending case would be insufficient. Defendant indicated he does not have transportation. In-person meetings would require him to travel an hour from his home; thus, the court expressed concern that "any compliance is going to be limited to phone meetings." The court expressed concern that OSPS had no way to monitor or confirm compliance with any other possible conditions, such as no contact with minors, no social media, and restrictions on movement. Therefore, OSPS would have to rely on defendant's own self-reporting of his compliance. The court cautioned, "they don't know what they don't know; and they really have no way of finding out what they don't know." The court noted home confinement or GPS monitoring would not prevent the defendant from communicating with minors or being on social media. The court stated electronic monitoring does little to address the issues that this defendant's conduct raises, especially with little information about his access to children in his community or online.

¶ 14 The trial court concluded the State met its burden of proving defendant committed a qualifying offense for which he would be statutorily eligible for detention under the dangerousness standard. The court further found defendant posed a real and present threat to the safety of all young girls in the community—specifically, those between the ages of 14 and 17—based on defendant's pattern of conduct "indicating not only communications with minors, but also personal phone numbers and contact enough to send money to these young girls." The court found there were no conditions that could mitigate the real and present threat to young girls and the community and that less restrictive conditions would not mitigate that threat.

¶ 15 On February 7, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Defendant asked the trial court to reconsider

its decision to deny his pretrial release because there were less restrictive means to protect the public other than keeping him in custody. Defense counsel argued a detainable offense is not enough to determine detention, and there is nothing in defendant's background or character that would overcome the presumption that he should be granted pretrial release. Defense counsel argued that defendant's circumstances (being 52 years old, living alone, working full-time) show he is not likely to come into contact with minors. Counsel argued OSPS could track and restrict defendant's movements with GPS monitoring and have weekly check-ins. Defendant contended the State's argument as to the inadequacies of the OSPS system is not among the factors to be considered under the Act.

¶ 16    On February 26, 2025, the trial court denied defendant's motion. The court stated it had not heard any new evidence, new argument, or suggestion that the court misunderstood the facts or misapplied the law. The court found its original decision set forth in great detail the reasons for its decision to deny defendant's pretrial release, and those findings were supported by the record.

¶ 17    This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    Under the Code, it is presumed that all criminal defendants are entitled to pretrial release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). The State may petition to overcome this presumption for a defendant charged with a detainable offense as enumerated in the statute. *Id.* § 110-6.1(a). The Code provisions applicable in this case required the State to prove by clear and convincing evidence (1) defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and (2) no condition or combination of conditions would

mitigate that safety threat. *Id.* §§ 110-2(b), 110-6.1(a)(1), (e)(3)(i). A finding of dangerousness alone does not automatically warrant pretrial detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 (finding pretrial detention requires more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. "[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 20      On appeal, defendant does not contest the trial court's finding that he was charged with a detainable offense and posed a real and present safety threat to others. Rather, he asserts the State failed to prove by clear and convincing evidence that there was no less restrictive condition or combination of conditions that would mitigate the threat. Specifically, defendant argues the State's reliance on the charged conduct itself and the inadequacies of the OSPS monitoring systems were insufficient to overcome the presumption of pretrial release. Defendant contends there are numerous conditions that would alleviate any danger he posed, noting that he is unlikely to come into contact with minors because he lives alone and works full-time in a warehouse and he is willing to abide by any pretrial conditions the court deems appropriate.

¶ 21      After our *de novo* review of the record, we conclude the State proved by clear and convincing evidence there existed no condition or combination of conditions that would mitigate the threat defendant posed to young girls or the community based on the specific articulable facts

in this case. Although defendant's criminal history is a recent circumstance, it is extremely troubling and demonstrates a pattern of behavior posing a dangerous risk to young girls in the community. Defendant was charged with five counts of child pornography after having already been arrested and charged with traveling to meet a minor for the purpose of engaging in sexual conduct. The record indicated defendant also had "dozens" of images on his phone that could be child sexual abuse material or child pornography, and there was an ongoing investigation into those photos. Possession of child pornography is inextricable from the act of creating it, and "[t]he abuse endured by these children, created for those, like defendant, who consume child pornography, is not a hypothetical possibility that may or may not come to pass. It has already happened." *People v. Jackson*, 2024 IL App (4th) 240441-U, ¶ 18. In this case, it is more troubling that the record shows defendant procured the pornographic images of the young girls, not by just finding the photos on the Internet and downloading them from some illicit source, but by communicating with the minor girls and paying them for the images. This level of contact and access to his victims, coupled with OSPS's inability to monitor defendant's social media and Internet usage, supports the conclusion there are no conditions or combination of conditions that could mitigate the serious threat defendant poses. Reliance upon GPS monitoring or defendant's own self-reporting of compliance with conditions, such as having no contact with minors and no access to the Internet, are inadequate to prevent the serious threat posed.

¶ 22        Although it has little bearing on this court's assessment of the record before us, we acknowledge defendant was granted pretrial release in the other pending case just a day before the hearing in this case. However, we agree with the trial court's assessment that the new charges changed things significantly in that defendant demonstrated contact and access to multiple victims and revealed a pattern of behavior that elevated the concerns about the ability to

protect young girls and the community from the danger he poses. We therefore conclude—based on the specific facts of the case, the nature and circumstances of the offense, and defendant's individual background and characteristics—there is no condition or combination of conditions that would mitigate the serious threat posed by defendant. We affirm the trial court's decision.

¶ 23                              III. CONCLUSION

¶ 24          For the reasons stated, we affirm the trial court's judgment.

¶ 25          Affirmed.

*People v. Popovich*, 2025 IL App (4th) 250196

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 25-CF-26; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |