NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 251033-U

NO. 4-25-1033

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RYAN E. COON, | ) | No. 25CF231 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the State proved by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the threat defendant posed to the community.

¶ 2    Defendant, Ryan E. Coon, appeals the denial of his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). He argues that his pretrial detention was not warranted because there were conditions of pretrial release that were sufficient to mitigate any threat he posed.

¶ 3    We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5    On September 11, 2025, defendant was charged by information with one count of traveling to meet a child, a Class 3 felony (720 ILCS 5/11-26(a), (b) (West 2024)), and one count of indecent solicitation of a child, also a Class 3 felony (*id.* § 5/11-6(a), (c)(3)). The same day, the

State filed a verified petition to detain defendant pretrial.

¶ 6        At a hearing on the petition, the State proffered that on September 8, 2025, Detective Drew Chase, who was operating a Facebook account as a fictitious 15-year-old girl, received a message from defendant. After being told the girl was 15 years old, defendant stated that he was 32 years old and suggested they move the discussion to another social media platform, Snapchat. On Snapchat, defendant indicated that he wanted to engage in sexual conduct with the girl and wished to meet up with her in person. Chase arranged a meeting with defendant near a Taco Bell restaurant. Defendant asked if the two could engage in intercourse and advised that he would bring a condom. Defendant was later observed entering the area behind the specified Taco Bell and was immediately taken into custody.

¶ 7        The State proffered that officers found photos of "several blond girls who appeared to be under the age of 18" on defendant's phone but noted that the girls were clothed in the photos. Officers were also told by a resource officer at the local high school that defendant had social media conversations with six other teenage girls. The youngest of these girls was 13. Defendant told the girls they were "smoke shows" and "knock-out gorgeous," and he asked to hang out with them at football games. Defendant also told the fictitious Facebook account run by Chase that he drove these girls to school. The State proffered that the girls had interviews scheduled as part of an ongoing investigation. However, no charges had been filed against defendant regarding his contact with them at the time of the hearing.

¶ 8        As its only exhibit, the State presented a four-page document detailing the capabilities of the Office of Statewide Pretrial Services (OSPS) in monitoring defendants who had been granted pretrial release. The document specifically noted that OSPS officers had no real way to monitor a defendant's online activity and instead relied on self-reporting. Defense counsel did

not object to the admittance of the exhibit but noted that the document provided only "the State's view of that." The trial court responded, "Understand. Yeah, and I would weigh it accordingly that this is the State's position *** based on conversations and communications with OSPS, but ultimately [the State's] viewpoint on that."

¶ 9    Defendant's criminal history included a stalking conviction in 2021, for which he received 24 months' conditional discharge, and a battery conviction in 2012, for which he received 24 months' probation. Based on his prior convictions, defendant received a score of 2 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), placing him in the category with the lowest risk of violating conditions of pretrial release.

¶ 10    The State argued that the proof was evident and the presumption great that defendant committed the offenses of indecent solicitation of a child and traveling to meet a child. Relying in part on the ongoing investigations against defendant, the State further argued that he posed a real and present threat to the safety of the community and that no condition or combination of conditions of release could mitigate the threat he posed. Referencing its exhibit, the State argued that OSPS did not have the ability to monitor defendant's electronic communications and, further, defendant had demonstrated a willingness to make use of events such as high school football games and driving minors to school in order to prey on them. The State concluded, "So, [defendant] has put himself in a position to have direct contact with minors in multiple ways, and that level of supervision is not provided for by the OSPS."

¶ 11    Defense counsel took issue with the State's reference to the ongoing investigation regarding the other six teenage girls, arguing the trial court should consider only the facts and circumstances of the instant case. He further asserted that conditions such as GPS monitoring, mental health treatment, and a prohibition on contact with female minors would successfully

mitigate any threat defendant posed.

¶ 12        The trial court found the proof was evident or the presumption great that defendant had committed a detainable offense. In addressing defendant's dangerousness and whether any conditions could mitigate the threat he posed, the court stated that it would consider the ongoing investigation against defendant because this information was relevant to defendant's character, his mental condition, his community ties, his prior criminal history, and "things of that nature." The court found that neither home confinement nor GPS monitoring would mitigate the threat defendant posed, as neither condition would prevent defendant from speaking with underage girls online. Similarly, it found that OSPS's monitoring of online activity was "based on self-reporting" and was therefore also inadequate to mitigate defendant's dangerousness, specifically given his established pattern of preying on young girls. The court stated,

> "[F]or this particular defendant, a defendant who has shown the ability or at least the desire to, starts on Facebook conversations and then says, lets move it to a more private conversation, to a different online forum altogether; just very concerned about this. If this was potentially just a one-off, if I only have one victim, maybe this is, well, it definitely would be a different analysis; but I have multiple potential victims here, I have a defendant who has a history of targeting victims in a particular age range, and the State is absolutely correct, the speed at which this, I hate to even use the word, relationship, but that this relationship with this fictitious 15-year-old girl, the speed with which it escalated is very, very concerning for this Court."

¶ 13        Ultimately, the trial court found that defendant posed a real and present threat to the community and that no conditions of release could mitigate that threat. It therefore granted the State's petition to deny defendant pretrial release.

- 4 -

¶ 14 Defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), arguing that the trial court should not have considered the ongoing investigation in making its decision and that less restrictive conditions of pretrial release could mitigate the danger he posed to the community. The court denied the motion for relief.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 On appeal, defendant argues that the State did not meet its burden of proving that no condition or combination of conditions of pretrial release could mitigate the threat he posed. Specifically, he argues that his history of compliance with court orders and his low score on the VPRAI-R showed that he would be compliant with any conditions the trial court wished to impose.

¶ 18 In Illinois, all persons charged with an offense are presumed eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2024). The fact that a defendant has been charged with a detainable offense and deemed to pose a threat to public safety is not enough to order detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. Rather, a court must additionally determine, by conducting an individualized assessment, that no possible conditions of release could mitigate the threat the defendant poses. *Id.* In making this determination, a court must consider factors such as the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the history and characteristics of the defendant, including his character, family ties, employment, community ties, conduct, criminal history, and record concerning appearances at court proceedings; and the nature and seriousness of the real and present threat to the safety of any person or the community. *Id.* ¶ 15. When the parties to a detention hearing proceed solely by proffer, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 19 We begin by noting that although defendant previously argued that the trial court

erred in considering the ongoing investigation in denying him pretrial release on the instant charges, he does not reassert this argument on appeal. Indeed, such an argument would be without merit, as a court may consider uncharged conduct in evaluating the propriety of granting or denying pretrial release. See *People v. Popovich*, 2025 IL App (4th) 250196, ¶ 21 (considering images of possible child sexual abuse material on the defendant's phone for which there was an ongoing investigation); *People v. Dunn*, 2024 IL App (1st) 240306, ¶ 32 (holding that uncharged allegations are properly considered in denying a defendant pretrial release because they demonstrate the defendant's history and characteristics and the nature and seriousness of the threat he poses to the community). Instead, defendant asserts that the State "provided very little detail about the circumstances of these ongoing investigations," and thus, it did not provide any further justification for denying him pretrial release. As discussed below, we disagree.

¶ 20      Defendant provides us with two factors that weigh in favor of his pretrial release: his previous compliance with court orders and his relatively low score on the VPRAI-R. However, neither of these factors is solely determinative, and we find more significant factors favor his detention. Specifically, the circumstances surrounding defendant's current charges, combined with the investigations into his contact with six underage girls, as well as the number of photos found on his phone of seemingly more underage girls, evince a striking pattern of predatory behavior. Minors are a vulnerable group, and the State proffered evidence that defendant utilized multiple avenues to prey on them. He not only allegedly contacted minors on at least two different social media sites, but it appears he also attempted to meet with them offline, either at high school sporting events, through rides to school, or, as alleged here, behind a Taco Bell. Whether he actively sought out this contact or merely took advantage of any opportunity that came his way, we find it unlikely that defendant would abstain from this well-established pattern. Indeed, as the

State pointed out, defendant showed very little hesitation in allegedly committing the actions that comprise his current charges, moving from casual conversation with what he believed to be a 15-year-old girl to a request for sex very quickly.

¶ 21    Considering this pattern of behavior, we conclude that no conditions of release could reasonably mitigate the threat defendant poses. GPS monitoring and home confinement would not stop him from contacting minors online. Moreover, while a prohibition on Internet usage and interaction with minor girls would mitigate the threat defendant poses if complied with, defendant's pattern of repeatedly seeking out virtual and real-life contact with underage girls is sufficient to think that he would not abide by these conditions.

¶ 22    As a final matter, we address defendant's argument that the trial court improperly decided to deny him pretrial release based on OSPS's perceived inadequacies in providing supervision. Defendant relies on *Atterberry* for this argument. However, a closer look at our decision in *Atterberry* illustrates not only the precise reasoning underlying our statements therein, but also how the instant case is distinguishable.

¶ 23    *Atterberry* was decided in 2023, when the current statutory scheme regarding pretrial release was relatively new. See *Atterberry*, 2023 IL App (4th) 231028, ¶ 13. The defendant there was charged with traveling to meet a child and indecent solicitation of a child, and the State filed a petition to detain him pursuant to the new provisions of the Code. *Id.* ¶¶ 3-4. Although the defendant had no criminal history and scored a 0 out of 14 on the VPRAI-R, the trial court denied him pretrial release. *Id.* ¶ 7. In a ruling that contained "a lengthy and biased commentary about the wisdom of Illinois's recent bail reform" (*id.* ¶ 16), the trial court concluded that because conditions of pretrial release were " 'loosely monitored,' " they were insufficient to mitigate the threat the defendant posed. *Id.* ¶ 7.

¶ 24    The defendant appealed, arguing that the trial court erred in finding that no conditions of pretrial release would mitigate the threat he posed to the community. *Id.* ¶ 10. We agreed, finding, "[T]he totality of the trial court's comments compels the conclusion that the court failed to, and refused to, consider and apply the proper statutory criteria in finding that no conditions could mitigate the threat defendant poses to minors." *Id.* ¶ 16. We noted that decisions to grant or deny pretrial release must be individualized, and a trial court must determine "based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* ¶ 18. However, in contrast to this requirement, the trial court in *Atterberry* "never articulated why there [was] reason to believe *this particular defendant* would not comply with any conditions of release." (Emphasis in original) *Id.* ¶ 19. Instead, its comments suggested "it believed there [were] no conditions of release other than monetary bail that [could] mitigate the threat posed by *anyone* who is charged with the offenses at issue." (Emphasis in original.) *Id.* Because the trial court did not consider the defendant's individual circumstances and instead based its decision only on "a general perception that conditions of release are loosely monitored," we found it had abused its discretion. *Id.* ¶¶ 18, 20.

¶ 25    It is clear, then, that our decision in *Atterberry* was not based on the trial court's consideration of the limits of OSPS's capabilities and how they might relate to a particular defendant. Indeed, we note that the Code *requires* a court to assess the adequacy of pretrial release conditions (725 ILCS 5/110-6.1(e) (3) (West 2024)), which necessarily involves an assessment of OSPS's limits. Rather, our criticism of the *Atterberry* trial court was based on its failure to consider the specific circumstances of that particular defendant's case in reaching its decision. As we explained, the court's statements about loosely monitored conditions of pretrial release would have

applied to *every* defendant that came before it equally, regardless of the individual defendant's circumstances. *Id.* This ran afoul of the Code's requirement that the decision to grant or deny a defendant pretrial release be individualized. See *id.*

¶ 26        In contrast to *Atterberry*, in the instant case, the trial court discussed the specific characteristics of defendant, noting in particular his pattern of predatory behavior. It discussed possible conditions of pretrial release, like electric home monitoring and GPS monitoring, and explained why they would be inadequate to mitigate the threat this specific defendant posed to underage girls. Notably, although the court found that OSPS could only monitor defendant's Internet usage by way of his self-reporting, it did not conclude that this would be insufficient in every possible scenario. Rather, it stated that self-reporting would be insufficient to monitor someone with the demonstrated behavior of this particular defendant. This was proper. See *Popovich*, 2025 IL App (4th) 250196, ¶ 21 (discussing OSPS's inability to monitor the defendant's Internet use and concluding that self-reporting by the defendant was inadequate to prevent the threat he posed, given his pattern of predatory behavior).

¶ 27        Finally, we note that our review here is *de novo*. See *Morgan*, 2025 IL 130626, ¶ 51. Even if the trial court had failed to make an individualized assessment of defendant's case, it would not impact our own review of the issue.

¶ 28        In sum, we find the State proved, by clear and convincing evidence, that no condition or combination of conditions of pretrial release could mitigate the threat defendant posed.

¶ 29                                    III. CONCLUSION

¶ 30        For the reasons stated, we affirm the trial court's judgment.

¶ 31        Affirmed.