NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 251398-U

NO. 4-25-1398

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 3, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ANTHONY E. BARTOSIK, | ) | No. 25CF322 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Steigmann and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court reversed and remanded for a hearing on the appropriate conditions of defendant's pretrial release, finding the State did not prove by clear and convincing evidence that (1) defendant posed a real and present threat to the safety of any person or the community and (2) there were no conditions of release that could mitigate the threat defendant posed.

¶ 2     Defendant, Anthony E. Bartosik, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), commonly known as the Pretrial Fairness Act. He argues the State failed to prove by clear and convincing evidence that (1) he posed a real and present threat to the safety of any person, persons, or the community and (2) no condition or combination of conditions of pretrial release could mitigate the threat he posed.

¶ 3     We reverse and remand with directions.

¶ 4                    I. BACKGROUND

¶ 5        On December 3, 2025, defendant was charged by information with 12 counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2024)). Two of the counts were Class 3 felonies and related to depictions of children under the age of 18. The other 10 counts were Class 2 felonies and related to depictions of children under the age of 13. The offenses were alleged to have occurred between April 2024 and August 2024.

¶ 6        The State filed a verified petition to detain defendant pretrial, and a hearing was held. The State proffered the following information: on July 21, 2025, a detective received a cybertip from the Internet service provider Google that 13 files containing apparent child pornography had been uploaded to a Google drive belonging to defendant. The detective obtained a search warrant for defendant's Google account, which yielded six photographs and seven videos. The photos showed various individuals under the age of 18, some of whom were "clearly under the age of 13," in different stages of undress, exposing their breasts or vaginas. The videos showed individuals who were all under the age of 13 engaged in various acts of masturbation, sexual penetration, or sexual conduct. In one of the videos, the child being filmed stated that she was 11 years old.

¶ 7        The State further proffered that a search warrant was executed on defendant's home, and he was brought to the Pontiac Police Department to be interviewed. Defendant waived his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and admitted to police that he had downloaded the images and videos from a messaging service called "Telegram" and saved them to his Google account.

¶ 8        A pretrial services report was admitted at the hearing. The report indicated that defendant was 28 years old, was employed full-time, and lived with his girlfriend and two children. Defendant also had another eight-year-old child, who stayed with him every weekend. The report

indicated that defendant had no history of mental health issues or substance abuse issues and had no prior criminal history. He scored a 0 out of 14 possible points on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), placing him in the category at the lowest risk of violating conditions of pretrial release.

¶ 9 The State also offered a document detailing the capabilities of the Office of Statewide Pretrial Services (OSPS) in monitoring defendants who have been granted pretrial release. This document discussed OSPS's use of GPS monitoring and home visits, as well as its officers' duties and the organization's reporting requirements. The document provided that "OSPS is committed to doing all it can to comply with the court's order and to hold defendants ordered to OSPS supervision accountable with the conditions of pretrial release."

¶ 10 Defense counsel proffered that defendant would agree to abide by any and all conditions of release imposed by the trial court, including a prohibition on contact with minors. Defendant also indicated that he was able to make alternative living arrangements with his mother so that he would no longer reside in a home with children.

¶ 11 The State argued that defendant posed a real and present threat to the safety of any person or the community, noting that he was an individual "who ha[d] essentially gone out of his way to obtain these videos and images of children who are under the age of 13, to save those for his own purposes." The State argued that the evidence showed defendant was attracted to minors, a vulnerable group in need of protection, and that as long as defendant continued to seek out this pornographic material, children would be in danger. The State further argued that OSPS could do nothing to meaningfully monitor defendant on pretrial release, as most of the monitoring would rely on defendant's own self-reporting. It therefore requested that the trial court grant its petition to deny defendant pretrial release.

¶ 12        Defendant argued that the State had failed to prove that no conditions of release would mitigate any threat he posed. He emphasized that he cooperated with police during the investigation, had no criminal record, scored a 0 on the VPRAI-R, and was willing to abide by any conditions of release the court imposed.

¶ 13        Following arguments, the trial court announced its decision. It emphasized that the crimes with which defendant was charged were "particularly abhorrent," noting that they spanned multiple months and involved children under the age of 13. The court acknowledged that defendant scored a 0 on the VPRAI-R and had no criminal record but found that that the fact that the crimes occurred "behind closed doors" made it difficult to impose any restrictions to reduce the risk of harm defendant posed to minors. It therefore found the State had met its burden of proof and granted its petition to detain.

¶ 14        On December 8, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). In the motion, he argued that less restrictive conditions than detention would have avoided any threat he posed based on his VPRAI-R score and his lack of criminal history. He further argued that the State's argument for detention centered around the charged conduct itself, with nothing presented as to his specific background or characteristics. Finally, he asserted that the "inadequacies of OSPS [were] not a factor to consider" under section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2024)) when deciding if pretrial release should be granted.

¶ 15        The trial court denied defendant's motion for relief.

¶ 16        This appeal followed.

¶ 17                                    II. ANALYSIS

- 4 -

¶ 18          Under the Code, all defendants are presumed eligible for pretrial release. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 13. To overcome this presumption, the State must prove (1) the proof is evident or the presumption great that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions can mitigate the threat the defendant poses. *Id.* ¶ 14. Where the parties at a detention hearing proceed solely by proffer and documentary evidence, our review is *de novo. People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 19          Here, defendant argues that the State failed to prove that he posed a real and present threat to the safety of the community and that no conditions of pretrial release could mitigate the threat he posed. We will address each issue in turn.

¶ 20                              A. Real and Present Threat

¶ 21          When determining whether a defendant poses a real and present threat to any person or the community, a court must consider factors such as (1) the nature and circumstances of the offense charged, including whether it is a sex offense; (2) the history and characteristics of the defendant, including his prior criminal history; (3) the identity of any person to whose safety the defendant is believed to pose a threat and the nature of that threat; (4) the age and physical condition of the defendant; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant was on probation at the time of the offense; and (7) any other factors deemed to have a reasonable bearing on the defendant's propensity for violent behavior. 725 ILCS 5/110-6.1(g)(1), (2), (3), (5), (6), (8), (9) (West 2024). A finding of dangerousness must be based on the specific, articulable facts of the case. *Id.* § 110-6.1(g). "[A] general recitation of the charges a criminal defendant faces" is insufficient to establish a defendant's dangerousness. *People v. Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17.

¶ 22    Defendant argues that possession of child pornography is not a physically violent crime such that his release would pose a "real and present threat" to a person or the community. He also argues that, in arguing his dangerousness, the State only presented evidence regarding the nature of his offenses. However, he argues that the specific facts of his case, such as his lack of criminal history and his low score on the VPRAI-R, show that he is not dangerous.

¶ 23    We agree with defendant that the State here did not prove his dangerousness by clear and convincing evidence. To begin, we briefly address defendant's argument that the mere possession of child pornography is not a violent crime. Although defendant does not acknowledge it, we have previously held otherwise. See *People v. Popovich*, 2025 IL App (4th) 250196, ¶ 21 (finding possession of child pornography is inextricable from the abuse inherent in its creation).

¶ 24    Regardless, even considering possession of child pornography as a violent offense would not be enough, by itself, to establish that defendant posed a real and present threat to any person or the community. "There is no offense so serious or so dangerous to *ipso facto* require detention." *People v. Shaffer*, 2024 IL App (4th) 240085-U, ¶ 26. Rather, section 110-2 of the Code (725 ILCS 5/110-2 (West 2024)) provides that *all* persons charged with an offense, even a violent one, are eligible for pretrial release. Here, the State argued that defendant posed a real and present threat to the safety of the community based on the fact that he had "gone out of his way to obtain these videos and images of children who are under the age of 13." In other words, the State argued that defendant was dangerous by reciting the facts of his charges: that he allegedly possessed child pornography. This is not sufficient to support a finding of dangerousness. See *Shaffer*, 2024 IL App (4th) 240085-U, ¶ 25 (finding that a dangerousness analysis that focuses exclusively on the nature of the charged offense "fails to comport with section 110-6.1 of the Code, which sets forth a multifactorial approach and is heavily weighted against detention").

¶ 25 Instead, there was significant evidence presented at defendant's detention hearing to suggest that he did not pose a real and present threat to the safety of any person or the community. Defendant had no criminal history, scored a 0 out of 14 points on the VPRAI-R, was not known to possess any weapons or firearms, was not on probation at the time of his offenses, was employed full-time, was compliant with police officers in his arrest, was able to make alternative living arrangements so as not to reside with any children, and had proffered that he would abide by any and all conditions imposed by the court. All these factors weighed against a finding of dangerousness.

¶ 26 Because the State failed to present evidence of defendant's dangerousness beyond the nature of the charged conduct itself, we find that it failed to prove this element by clear and convincing evidence.

¶ 27                                    B. Conditions of Release

¶ 28 Defendant also argues that the State failed to provide evidence that he would not abide by any conditions that were imposed. He further asserts that the capabilities of OSPS are not a factor to be considered in denying a defendant pretrial release.

¶ 29 When determining what, if any, conditions of pretrial release will reasonably ensure the safety of a person or the community, the court must consider factors such as (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his criminal history, employment, and whether he was on probation at the time of the offense; and (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 5/110-5(a)(1)-(4) (West 2024). Again, bare allegations that a defendant committed a violent offense are not sufficient to establish that no

conditions of release could mitigate the threat he poses. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18.

¶ 30 We find there were conditions of release that could have mitigated the threat that defendant posed to the safety of the community. For example, because defendant's charged conduct occurred entirely online, a prohibition on Internet and social media use would have effectively mitigated any potential threat. See *People v. Reamy*, 2024 IL App (2d) 240084-U, ¶ 17 ("Given the fact that all of [the defendant's] conduct was carried out over the Internet, it is axiomatic that prohibiting [him] from using or accessing the Internet would mitigate any harm stemming from these types of conduct."). While banning Internet or social media use might not be sufficient to mitigate the threat a defendant poses in every case, there was ample reason to believe it would be sufficient in the instant case. As stated, defendant had no criminal history, was employed, and scored a 0 out of 14 possible points on the VPRAI-R, placing him at the lowest risk of violating conditions of release. He had also previously been compliant with law enforcement and proffered at his detention hearing that he would continue to be compliant in abiding by all release conditions imposed by the court. Although the State argues that OSPS's available monitoring tools were limited, there is no reason to believe they would be insufficient in this case, with this particular defendant. See *Atterberry*, 2023 IL App (4th) 231028, ¶ 18 ("[A] court should not rule out pretrial release for a defendant based on a general perception that conditions of release are loosely monitored.").

¶ 31 The State also argues that the nature of defendant's charges supported a finding that no conditions of release could mitigate the threat he posed. As with our analysis of defendant's dangerousness, we note that this factor is relevant but insufficient on its own. "If the legislature were convinced that all criminal defendants charged with child pornography presented an

- 8 -

unmitigable threat to the community, it would have simply deemed those accused of child pornography ineligible for release." *Reamy*, 2024 IL App (2d) 240084-U, ¶ 23. Yet, it did not do so. There is nothing to suggest that this particular defendant, although charged with a violent offense, could not be granted pretrial release with appropriate conditions.

¶ 32 Because the State failed to prove by clear and convincing evidence two of the necessary elements to deny defendant pretrial release, either one of which would be sufficient to reverse, we are compelled to do so. We remand to the trial court with directions to hold a hearing on the appropriate conditions of defendant's pretrial release. See *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 45.

¶ 33                                                III. CONCLUSION

¶ 34 For the reasons stated, we reverse the trial court's judgment and remand for a hearing on the appropriate conditions of defendant's pretrial release.

¶ 35 Reversed and remanded.